151 N.J. Super. 353 (1977)
376 A.2d 1282
F & M SCHAEFER BREWING COMPANY AND THE INTERBOROUGH MUTUAL INDEMNITY INSURANCE COMPANY OF MINEOLA, NEW YORK, PLAINTIFFS,
v.
FORBES FOOD DIVISION, CHEMICAL LEAMAN TANK LINES, INC., AND CHEMICAL LEAMAN TANK LINES, INC., AND AETNA LIFE AND CASUALTY COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 21, 1977.
*354 Mr. Vincent J. Cartier, attorney for plaintiffs (Messrs. McLaughlin & Cartier, attorneys).
Mr. Frank L. Brunetti, attorney for defendants (Messrs. Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys).
MONAGHAN, J.D.C., Temporarily Asssigned.
The litigation in this indemnification action revolves around the question as to whether there is insurance coverage under a "loading and unloading" clause in an automobile liability policy. The case was submitted upon a written stipulation of facts and read into the record at a hearing before the court. In *355 addition, exhibits were introduced into evidence and briefs submitted.
On December 13, 1972 William Thomas, employed as a tank truck driver by Chemical Leaman Tank Lines, Inc. (Leaman), drove to the premises of the F. & M. Schaefer Brewing Company (Schaefer) for the purpose of making a pick-up of yeast slurry, a by-product of the brewing industry. The trip was made pursuant to a contract between Leaman and the Campbell Soup Co., who was the purchaser of the yeast slurry from Schaefer. Thomas drove to the slurry loading area on the Schaefer premises and parked his truck near a piping outlet which was used in making transfers of the slurry from the Schaefer plant to tank trucks. In order to permit the easy alignment of the end of the discharge pipe with the opening in the top of the tank trucks, the pipe outlet was connected to a swivel and spring-tension apparatus. This permitted the piping to be moved horizontally or lifted vertically by the use of an attached rope. The procedure followed, when the piping was in its set position, was for the driver of the tank truck to then go to a buzzer, located on the building wall, and signal the Schaefer employees inside the plant that everything was ready for the opening of the valves to permit the yeast slurry to be transferred by gravity flow to the truck.
On this day Thomas, after parking his truck, climbed the ladder of the truck and stood on the catwalk. He opened the manhole on the top of the truck and was then thrown the rope by a Schaefer employee. In maneuvering the pipe so that it would fit over the manhole, Thomas had to pull on the rope. In doing so the rope broke, causing him to lose his balance and fall to the ground, sustaining severe injuries.
Following the accident Thomas sued Schaefer for damages for personal injuries. Although that action was ultimately settled, Schaefer, for the purposes of this proceeding, has admitted that the rope was defective as the result of it being exposed to a caustic soda cleaning solution that had been used to clean the piping hose.
*356 Subsequent to the institution of the Thomas suit Schaefer notified Leaman and its insurer that the Thomas accident was covered under the loading/unloading clause of Leaman's motor vehicle policy. Leaman's insurer, Aetna Casualty and Surety Company (Aetna), rejected Schaefer's contention and refused to undertake the defense of the action against Schaefer. Thereafter Schaefer and its underwriter, Interboro Mutual Indemnity Insurance Company (Interboro), brought this indemnification action, seeking coverage under the policy.
The relevant portions of the Aetna policy read as follows:

I. BODILY INJURY LIABILITY COVERAGE

PROPERTY DAMAGE LIABILITY COVERAGE
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 bodily injury or
 property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile * * *

II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured
(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
(1) a lessee or borrower of the automobile, or
(2) an employee of the named insured or of such lessee or borrower; * * *
It has been the contention of plaintiffs Schaefer and Interboro that the injuries of Thomas occurred during the loading of the Leaman truck and therefore Schaefer was an additional insured under the loading/unloading clause of the policy. Defendants, on the other hand, argue that Schaefer cannot be considered to be an insured under the policy because the accident did not occur during the loading of the tank *357 truck, nor was Schaefer a borrower or lessee of the truck, as would be required when a person, other than the named insured, claims to be an additional insured under the loading/unloading clause.
Generally speaking, the courts have construed "loading and unloading" clauses as expanding the meaning of the phrase "use of the automobile" in the omnibus clause of automobile liability policies and consequently have extended the insurance coverage to some accidents in which the vehicle does not take an active part. Maryland Cas. Co. v. N.J. Mfrs. Cas. Ins. Co., 48 N.J. Super. 314 (App. Div. 1958), aff'd 28 N.J. 17 (1958); Connecticut Indem. Co. v. Lee, 168 F.2d 420 (1 Cir.1948). In the majority of jurisdictions the courts have adopted one of two basic theories: either the "coming to rest" doctrine or the "complete operation" doctrine. Annotations, 160 A.L.R. 1259 (1946) and 95 A.L.R.2d 1122 (Supp. 1964). Under the "coming to rest" doctrine, unloading
* * * comprises only the actual removing or lifting of the article from the motor vehicle up to the moment where (a) the goods which were taken off the automobile have actually come to rest and (b) every connection of the motor vehicle with the process of unloading has ceased. [160 A.L.R. at 1264]
The "complete operation" rule, on the other hand, is one of broader construction, interpreting the loading/unloading clause to include the
* * * entire process involved in the movement of goods from the moment when they are given into the insured's (the trucker's) possession until they are turned over at the place of destination to the party to whom delivery is to be made. Id. at 1267.
The more inclusive "complete operation" doctrine appears to have become the rule followed by the New Jersey courts. Cenno v. W. Virginia Paper & Pulp Co., 109 N.J. Super. 41 (App. Div. 1970), certif. den., 56 N.J. 99 (1970); Drew Chem. Corp. v. Amer. Fore Loyalty Group, etc., 90 N.J. *358 Super. 582 (App. Div. 1966); Maryland Cas. Co. v. N.J. Mfrs. Cas. Ins. Co., supra; Turtletaub v. Hardware Mut. Cas. Co., 26 N.J. Misc. 316, 62 A.2d 830 (D. Ct. 1948).
However, the fact that an accident occurs during the loading or unloading of a vehicle does not in itself mean that coverage will be provided by the automobile insurance. What is required to establish coverage is that the act or omission which resulted in the injury or damage be an act or omission which was necessary to carry out the loading or unloading process, Employers Liab. Assur. Corp. v. Indemnity Ins. Co., 228 F. Supp. 896, 900 (D. Md. 1964), and not merely an act or omission concerning the maintenance of the loading or unloading premises. The case of Atlantic Mut. Ins. Co. v. Richards, 100 N.J. Super. 180 (Ch. Div. 1968), aff'd 105 N.J. Super. 48 (App. Div. 1969), is a good example of this dichotomy. That case held that despite the fact that the plaintiff's deceased husband had been injured during the unloading of a truck, the actual cause of the accident was the negligent maintenance of the loading platform. In so holding the court said:
To construe the maintenance of the loading platform as a "use of the automobile" in unloading would be to extend automobile liability coverage to negligence occurring prior to the arrival of the truck, that is, failing to remove dunnage from the proximity to the open stairwell, and to a nuisance grounded in negligence, that is the stairwell without guardrail. [at 183]
As the result of such a determination the court found that the accident occurred outside of the coverage provided by the loading/unloading clause in the truck owner's insurance policy. Accord, General Acc. Fire and Life Assur. Corp. v. Brown, 35 Ill. App.2d 43, 181 N.E.2d 191 (D. Ct. App. 1962); Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 260 Ind. 32, 291 N.E.2d 897 (Sup. Ct. 1973); see Cenno v. W. Virginia Paper & Pulp Co., supra; American Oil Co. v. Hardware Mut. Cas. Co., 408 F.2d 1365 (1 Cir.1969); Southern California Petro Corp. v. Royal Indem. Co., *359 70 N.M. 24, 369 P.2d 407 (Sup. Ct. 1962); Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. Co., 18 A.D.2d 460, 240 N.Y.S.2d 88 (App. Div. 1963).
In reviewing the facts of the case at bar it may initially appear that the negligence involved would be of the type that would fit into the category of negligent maintenance of the premises. The landowner, here Schaefer, was under a duty to maintain its premises in a reasonably safe condition, and part of those premises included the rope attached to the slurry transfer equipment. However, while this duty existed generally with regard to Schaefer's business invitees, it also was required as a specific step in the loading operation of the Leaman truck. Although there are no factually similar New Jersey cases which have held as such, there are at least two out of state cases which have come to similar conclusions.
The case of Travelers Ins. Co. v. Employers' Liability Assur. Corp., 242 F. Supp. 627 (D. Md. 1965), aff'd 4 Cir. 367 F. 205 (1966), involved an injury to a truck driver during the loading of oil into his tank truck. The flow of oil was controlled by a loading valve which could be activated by pulling an attached cord. On the day of the accident the driver climbed on top of the truck for the purpose of filling the tanks. After filling the first tank he put the spout into the second tank and pulled the wire cord. The cord was defective and snapped, thus causing him to fall backwards off the truck and suffer injuries. The court, in applying the "complete operation" doctrine, held that the owner of the oil truck loading facility was within the loading/unloading clause of the automobile insurance policy covering the truck. Following the rationale espoused in Employers' Liab. Assur. Corp. v. Indemnity Ins. Co., supra. at 900, the court said:
Temporally, Yates' [the driver] injury occurred during the loading of the truck. It occurred during the step in the loading process of releasing the valve which would have permitted the oil to flow into the truck. The act which resulted in the injury was necessary to carry out the loading and it made operative Hess' [the landowner] negligent maintenance of a defective wire cord [242 F. Supp. at 629]
*360 While the court did not directly address itself to the distinctions between negligence in the performance of a necessary step of the loading/unloading process and negligence with reference to the maintenance of the premises, it seems that inferentially, the court did deal with this problem. Such an inference can be made from the above-quoted paragraph. As can be seen from that quotation, the court implied that although the landowner's negligent maintenance of the wire cord occurred prior to the loading process, it did not become "operative" until the driver attempted to make use of the cord.
The facts of Columbia So. Ch. Corp. v. Manufacturers & Wholesalers Ind. Exch., 190 Cal. App.2d 194, 11 Cal. Rptr. 762 (D. Ct. App. 1961), seem to be in even closer alignment to the present controversy before this court. There, a truck driver had gone to a soda ash manufacturing plant in order to pick up a truckload of that product. The loading operation was conducted by driving the truck to the delivery machinery, there parking it, and receiving the ash into the body of the truck through a flexible spout. The truck driver directed the spout into the truck, the spout being so constructed that it could be moved from one hatch of the truck to another by the use of an attached rope. The delivery of the ash through the spout was controlled by an employee of the manufacturer. On the day in question the truck driver, after receiving all of the ash that his truck could hold, attempted to use the rope to lift the loading spout out of the hatch. The rope was so worn and frayed that it broke, causing the driver to fall backwards off the truck, thereby sustaining serious injuries. The court, in holding that the manufacturer came within the loading/unloading clause of the truck owner's insurance policy, said:
In the case here at bar, lifting the loading spout out of the hatch was part of the process of loading in which respondent [the manufacturer] actively participated through providing and controlling the ash and equipment that delivered. The furnishing of a defective rope which Goddard (the driver) was expected to use was as much negligence as though respondent's employee had negligently swung the *361 loading spout and knocked Goddard off. Our concern here is whether or not the negligence causing the injury was an integral part of the loading operation * * * [at 768]
The Court did not discuss any possible distinction between the negligent maintenance of the premises and negligence involved in any act or omission during the loading process, but directly concluded that the "furnishing" of the defective rope was an act of negligence which occurred during the loading process.
Whether the negligence involved in the present case be considered to be negligence which became "operative" at the time of the truck loading, under the reasoning of the Travelers Insurance case, or that the negligence occurred when Schaefer "furnished" a defective length of rope to the driver, using the Columbia rationale, the conclusion here will be the same, that is, that Schaefer's negligence was an act or omission which occurred during the loading process. But this conclusion does not finally resolve the present dispute because the operation of the loading/unloading clause in this case differs from the operation of such clauses construed in the above-cited cases. Those cases involved loading/unloading clauses which were of the more standard form. The insurer, in those cases, undertook to pay damages which the insured became legally obligated to pay because of bodily injury or property damage caused by an occurrence and arising out of the use of the automobile. The definition of "insured" extended to any person using the automobile with the permission of the named insured. Use of the automobile included the "loading and unloading thereof." In this case, however, a limitation has been added onto the loading/unloading clause by the definition of the word "insured." In order for a person, other than the named insured, to be considered as an insured when an accident occurs during the loading or unloading of the automobile, that person must either be
(i) a lessee or borrower of the automobile, or
(ii) an employee of the named insured or such lessee or borrower. *362 Therefore, if Schaefer is to be considered to be an additional insured under the policy, it must be shown that its negligence occurred during the loading process and that it was a lessee or borrower of the vehicle. As between these last two alternatives, obviously it will be easier for a person to come within the definition of the word "borrower" than it will be to come within that of the word "lessee," since the latter will require a more formal relationship, although it is recognized that a lease may arise under certain informal circumstances. Thus, we should momentarily focus our attention upon the meaning of the word "borrower."

Webster's Third New International Dictionary
defines "borrower" as "one that borrows." The word "borrow" is defined to mean:
1: to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender: obtain the temporary use of * * *
The definition implies that in order for a person to become a borrower he must assume a certain amount of control, dominion or power over the object being borrowed. Applying this definition to the case at bar, it will have to be shown that Schaefer had some control over the tank truck during the loading process. Support for this conclusion can be found in the case of White v. Great American Ins. Co. of N.Y., 343 Fed. Supp. 1112 (M.D. Ala. 1972), which involved a loading/unloading clause containing language almost identical to the one now being interpreted by this court. Despite the scarcity of facts presented by that court, it appears that the truck-loading operations had been under the supervision and control of the landowner's employees when the truck driver had been injured. With reference to the loading/unloading clause, the court found that the landowner's employees *363 * * * were employees of a lessee or borrower of the truck and were within the definition of "insured" * * * The truck, at the time of the accident, was in the possession of Union Camp [the landowner] for purposes of loading the consignment. [At 1117]
Such a determination, however, cannot be made in the present case, for the only involvement which the Schaefer employees had with the loading operation was the preparation of the slurry transfer apparatus (connecting of the necessary hoses and opening of the necessary valves) within the building and the throwing of the rope to Thomas. These activities are insufficient to find that Schaefer had the requisite control, dominion or power over the truck to attain the status of a "borrower." The Schaefer employees were merely cooperating with the truck driver in the transferring of the yeast slurry to the tank truck. The truck, at all times, had remained in the possession and control of the driver. It was the driver, by the use of the buzzer signal system, who determined when and in what quantity the yeast slurry would be deposited into the truck. The Schaefer employees were acting at his direction, rather than the other way around. Consequently, Schaefer cannot be considered to be an additional insured within the loading/unloading clause of the Aetna policy.
In view of this determination, judgment is granted in favor of the defendants. Submit an appropriate order.