LIBERTY MUTUAL INSURANCE
COMPANY, Petitioner,

v.

AMERICAN EMPLOYERS INSURANCE
COMPANY et al., Respondents.

No. B–6566.

Supreme Court of Texas.

July 27, 1977.

Rehearing Denied Sept. 27, 1977.

A. L. Breeland, Dallas, Brown, Herman, Scott, Dean & Miles, Massie Tillman and J. Shelby Sharpe, Fort Worth, for petitioner.

Shannon, Gracey, Ratliff & Miller, Eugene J. Dozier and Harold A. Mueller, Fort Worth, for respondents.

SAM D. JOHNSON, Justice.

American Employers Insurance Company sought a declaratory judgment that a policy issued by Liberty Mutual Insurance Company to U. S. Plywood required Liberty to defend Homette Corporation, American's insured. The trial court rendered a judgment that Liberty's policy created a duty to defend Homette. The court of civil appeals affirmed. 545 S.W.2d 216. We reverse and render judgment that Liberty has no obligation to defend Homette.

The sole question is whether the evidence supports the conclusion of the courts below that a truck and flatbed trailer were "borrowed" by Homette under the provisions of a comprehensive automobile liability insurance policy issued by Liberty to U. S. Plywood, a division of Champion International Corporation. Liberty issued a policy to U. S. Plywood which provided coverage for bodily injuries suffered as a result of a loading or an unloading of a vehicle owned by U. S. Plywood. The coverage was limited to employees of U. S. Plywood and lessees or "borrowers" of vehicles owned by U. S. Plywood.[1]

Don Dragoo, an employee of U. S. Plywood, delivered a load of plywood decking to a plant owned by Homette. After parking the vehicle, Dragoo removed the nylon webbing used to secure the six-foot stacks of Novadeck, a type of plywood decking. Homette's employees began to unload the decking, using forklifts to unload about twenty sheets at a time. Dragoo was standing on the side of the truck opposite from that on which the unloading was begun. Dragoo was not aiding the unloading in any manner. He was merely rolling up the webbing used to secure the decking on the delivery truck when several sheets of the decking struck and killed him.

Subsequently, Dragoo's widow sued Homette, alleging negligence on the part of Homette, its agents, or its employees which proximately caused Dragoo's death. American, Homette's insurance carrier, then sought a declaratory judgment that, under the policy issued by Liberty to U. S. Plywood, Liberty had a duty to defend Homette. American asserted that Homette had "borrowed" U. S. Plywood's vehicle in order to unload it and, thus, Homette came within the protection of the policy as a "borrower" of U. S. Plywood's vehicle. The trial court, sitting without a jury, rendered judgment for American. The court filed findings of

---

1. The policy provided:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A bodily injury or Coverage B property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, . . .

". . . .

"PERSONS INSURED. Each of the following is an insured under this insurance to the extent set forth below:

"(a) the named insured;

". . . .

"(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

"(1) a lessee or borrower of the automobile, or

"(2) an employee of the named insured or of such lessee or borrower;

". . . .

"When used in this policy . . . 'automobile' means a land motor vehicle, trailer, or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) . . . ."

The policy does not define "borrower." Neither party contends that the "lessee" requirement applies.

fact[2] and conclusions of law that Dragoo was not engaged in "unloading" the truck at the time of his death, that Homette exercised no control over the movement of Dragoo or the truck, that Dragoo's death occurred while the truck was being "unloaded," and that Homette had "borrowed" the truck for the purpose of unloading it.

The court of civil appeals defined "borrower" as "someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes." 545 S.W.2d 216 at 223. That court concluded that Homette met these requirements and therefore was a "borrower." Although we agree with the court of civil appeals' general definition of "borrower," we do not agree that Homette falls within it because these is no evidence that Homette had possession of the truck and trailer rig.

We base our holding on recent changes in coverage afforded by automobile liability insurance. Prior to the addition of the loading and unloading endorsement to the automobile liability policy neither the automobile policy nor the standard liability policy defined which insurer had liability coverage for injuries sustained upon the premises of one who was insured under a general liability policy during the loading and unloading of a vehicle not owned or hired by the general liability insured. This question was settled by the later addition of the loading and unloading clause: the automobile liability insurer would provide coverage for injuries sustained as a result of negligence in the loading and unloading of the vehicle. *Commercial Standard Ins. Co. v. American Gen. Ins. Co.*, 455 S.W.2d 714, 717 (Tex.1970). The inclusion of the loading and unloading clause expanded the coverage of the policy from that afforded by the phrase "ownership, maintenance or use . . . of any automobile." *American Employers Ins. Co. v. Brock*, 215 S.W.2d 370, 372 (Tex.Civ.App.—Dallas 1948, writ ref'd n.r.e.); *Fireman's Fund Insurance Co. v. Canal Insurance Co.*, 411 F.2d 265, 268 (5th Cir. 1969); *Penley v. Gulf Insurance Company*, 414 P.2d 305 (Okl.1966); *Columbia So. Ch. Corp. v. Manufacturers & W. Ind. Exch.*, 190 Cal.App.2d 194, 11 Cal.Rptr. 762 (Dist.Ct.App.1961). Texas has adopted the broader majority view that "loading and unloading" embraces not only the immediate transfer of the goods to or from the vehicle, but also the complete operation of transporting the goods between the vehicle and the place from or to which they are being delivered. *Travelers Insurance Co. v. Employers Casualty Co.*, 380 S.W.2d 610 (Tex.1964). Under the complete operation approach the coverage provided by a loading and unloading clause extended to a broad group of persons who were not employees of the owner of the vehicle; the only requisite for coverage was that they were using (unloading) the truck with the consent of the owner. *Travelers Insurance Co. v. Employers Casualty Co., supra*, at 614.[3]

---

2. The trial court, in the pertinent findings of fact, stated:

". . . .

"4. It was understood and had been the practice in the past that upon the arrival of U. S. Plywood's truck on Homette's premises, Homette employees would unload the truck;

"5. Such was the situation on the date in question;

"6. While on the premises of Homette, Dragoo drove U. S. Plywood's truck to the unloading area of Homette;

"7. Homette employees were standing by at such time to unload the truck. Upon Dragoo's arriving at the unloading area, he removed the bindings that retained the decking to the bed of the truck and then stood beside the truck while

employees of Homette, using a forklift, began unloading the cargo;

". . . .

"9. At no time during the proceedings did any employees of Homette exercise any control over the movements of Mr. Dragoo or the truck;

". . . .

"11. At the time of his death, Dragoo was not engaged in 'unloading' the truck; . . . ."

3. For example, in *Travelers Insurance Co. v. Employers Casualty Co., supra*, the automobile liability carrier for Capitol Aggregates, Inc., a company which delivered concrete to a construction jobsite, was required to pay the amount of a settlement entered into between the beneficiaries of workers killed in an accident and Borders Steel Erection Company.

■ General rules of construction lead us to conclude that the policy exclusion for persons who were unloaders but not "borrowers" of the vehicle was intended to limit the insurer's liability for injuries resulting from acts of these nonemployees of the owner of the vehicle. The purpose of an exclusion is to take something out of the coverage that would otherwise have been included in it. *Maryland Casualty Co. v. Texas Fireproof Storage Co.*, 69 S.W.2d 826, 827 (Tex.Civ.App.—Waco 1934, writ ref'd). An interpretation that gives a reasonable meaning to all provisions is preferable to one that leaves a portion of the policy useless, inexplicable, or creates surplusage. *Melton v. Ranger Insurance Co.*, 515 S.W.2d 371, 374 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). The inquiry then becomes whether, given the limiting effect that the exclusion was intended to have, the court of civil appeals correctly analyzed the evidence in the present case.

■ The evidence in the record reflects that Dragoo parked the truck and Homette then began to unload. Homette's employees did not move the truck on this occasion nor is there evidence that U. S. Plywood consented on any other occasion to the movement of the truck by Homette's employees. There is no evidence that Homette's employees had ever in the past moved a U. S. Plywood truck as part of the unloading operation. There is no evidence that Homette's employees had ever instructed Dragoo to move the truck from one location to another. There is no evidence who had the keys to the truck at the time of the accident. The only evidence in the record is the statement by the sales manager of U. S. Plywood that Homette had express or implied permission to unload the decking. It is impossible to conclude from this statement that Homette had sufficient possession to be a "borrower." The only contact Homette's employees had with the truck was to drive up to it with forklifts and remove the decking. If, as American argues, this was enough to bring Homette within the policy, the "borrower" require-

ment would be meaningless because one would need only to be an unloader to also be a "borrower." We decline to adopt American's construction of the policy. While unloading is a "use" of the vehicle, the conjunction "and" in the definition of "borrower" indicates that one must also have possession of the vehicle to be a "borrower." Possession connotes the right to exercise dominion and control over the truck and trailer. There is no evidence that Homette had this right.

The court of civil appeals cited a number of cases that involved insurance policies containing "borrower" language. For various reasons these cases are not dispositive of the instant case. In neither *Gary Safe Company v. Transport Insurance Co.*, 525 S.W.2d 64 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ), nor *White v. Great American Insurance Co. of New York*, 343 F.Supp. 1112 (M.D.Ala.1972), did the court explain the basis for its conclusion that an unloader was a "borrower." The court in *National Auto. & Cas. Ins. Co. v. Glens Falls Ins. Co.*, 493 S.W.2d 909 (Tex.Civ.App.—Tyler 1973, no writ), and in *Prudhomme v. Vancouver Plywood Co.*, 240 So.2d 587 (La.App.1970), did not discuss the "borrower" provision in the policy. The facts were much more favorable than here to a finding that the vehicle was "borrowed" in *Walter S. Koydranski Co., Inc. v. Jamestown M. Ins. Co.*, 40 App.Div.2d 187, 338 N.Y.S.2d 634, *aff'd mem.*, 34 N.Y.2d 542, 354 N.Y.S.2d 104, 309 N.E.2d 873 (1974). The court did not deal with the question of possession in *Broome County Co-Op. Fire Ins. Co. v. Aetna Life and Casualty Co.*, 75 Misc.2d 587, 347 N.Y.S.2d 778 (Sup.Ct.1973).

In conclusion, we do not find the cases cited by the court of civil appeals persuasive. We hold that merely proving one had the right to remove goods from a truck is not evidence one was a "borrower" of the truck. There must be evidence of possession. The record in this case discloses no such evidence.

The judgments of the trial court and the court of civil appeals are reversed and judg-

---

The workers were employed by the general contractor on the job and were killed when a

crane, owned by Borders and used to unload Capitol's trucks, buckled and fell.

ment is rendered declaring that Liberty Mutual Insurance Company is not obliged to defend the suit.

BARROW, J., not sitting.