**Gerome ROBINSON et al., Appellants,**

v.

**EXCALIBUR INSURANCE COMPANY, Appellee.**

**No. B2207.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 20, 1980.

Rehearing Denied With Opinion March 26, 1980.

Second Rehearing Denied April 16, 1980.

Joe W. Redden, Jr., James B. Sales, Fulbright & Jaworski, Marcus F. Schwartz, Vinson & Elkins, Houston, for appellants.

Charles W. Lyman, Talbert, Giessel & Stone, Paul F. Waldner, Archer & Peterson, Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

OPINION

JUNELL, Justice.

This is a suit to construe the "loading and unloading" clause of automobile liability insurance policy. Plaintiffs/appellants, Robinson and Ramjinsky, after satisfying a judgment rendered in favor of James Crowder, sought a determination that they were additional insureds under a policy of insurance issued by the defendant/appellee, Excalibur, and entitled to recover the amount of the judgment together with costs and attorney's fees. Trial was to the court without a jury.

The controlling question is whether there was any evidence raising a fact issue as to whether Robinson was a "borrower" of a truck and trailer within the meaning of the "loading and unloading" coverage provisions of an insurance policy issued by Excalibur to Belger Cartage Service, the employer of James Crowder.

At the conclusion of the plaintiffs' case in chief the defendant Excalibur moved for judgment on the ground that the evidence offered by plaintiffs did not raise a fact issue concerning "borrower" status of Robinson. The trial court granted the motion and rendered judgment for Excalibur. We agree with the holding and affirm the judgment of the trial court.

Plaintiff Gerome Robinson owns and operates a railroad salvage yard in Eagle Lake, Texas. His business consists of purchasing, dismantling and salvaging damaged railroad cars and parts. On the occasion of James Crowder's injury several boxcars were delivered to Robinson's place of business by Crowder and other truck drivers employed by Belger Cartage Service. The boxcars, which were some sixty feet long, had been hauled from Houston on "loboy" trailers.

Robinson's salvage yard sprawls over approximately one hundred acres. There is no dock or specified loading and unloading area. Boxcars might be unloaded at any point in the yard on a given day. It was customary for the Belger drivers to check in

at the front gate when they arrived at the Robinson yard. They would either be told where to take their trucks, or they would actually be directed to a particular area of the yard.

Jack Shields, Robinson's yard foreman, was in charge of the unloading operation. On that particular day he planned to use a bulldozer to unload the boxcars. Robinson had rented a bulldozer with an operator from R & D Bulldozing, which was Herbert Ramjinsky's company.

After the Belger trucks arrived at Robinson's yard, Shields guided them to the area that he had selected for unloading. He then directed the driver of the first truck to be unloaded to the exact spot where the unloading operation was to take place. The truck drivers removed the chains and loadbinders from the load on that truck and then stood clear. Shields then signaled Glasco, the bulldozer operator, to use the blade of the bulldozer to knock the boxcar off the trailer. When the boxcar was knocked or pushed off the trailer, it landed at an angle to the trailer and was either hung on the trailer or was against it or very near it.

Shields then stepped up on the trailer and determined that it would not be possible to back the truck and trailer out of the area without first moving the boxcar away from the trailer. The truck could not be driven forward because there was a deep gully directly ahead. Shields directed the bulldozer operator to push the end of the boxcar away from the trailer. In the meantime James Crowder and Donnie Jones, two of the Belger truck drivers, had gone into the area between the trailer and the boxcar and had begun to pick up timbers, which were part of the Belger equipment used in connection with the hauling of the boxcars. The truck drivers were to put these timbers back on the "loboy" trailer before the truck and trailer were moved out of the unloading spot to make room for the next truck to be properly spotted for unloading.

While Crowder was between the trailer and the boxcar, the bulldozer pushed on one end of the boxcar; and the other end swung around and pinned Crowder's leg to the trailer, seriously injuring him.

Excalibur's automobile liability insurance policy, issued to Belger Cartage Company, provides as follows;

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, . . .

\* \* \* \* \* \*

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

. . . . .

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury . . . arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named insured or of such lessee or borrower[.]

The evidence was undisputed that the injury to James Crowder arose out of the unloading of the Belger vehicle. Robinson claimed that he was a "borrower" of the Belger vehicle at the time of Crowder's injury and, consequently, is an additional insured under the above-quoted provisions of the Excalibur policy.

The controlling authority construing an identical "lessee or borrower" provision contained within the policy issued by Excalibur is *Liberty Mutual Insurance Company v. American Employers Insurance Company*, 556 S.W.2d 242 (Tex.1977). In that case the

Texas Supreme Court held that one must have possession of a vehicle in order to be a "borrower." That court approved a general definition of "borrower" as "someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes." 556 S.W.2d at 244. In *Liberty Mutual* the supreme court held as a matter of law that Homette Corporation was not a "borrower" of a U.S. Plywood truck during an unloading operation because there was no evidence in that record to raise a fact issue on the question of whether Homette Corporation had possession of the truck. Therefore, the dispositive question before this court is whether there is any evidence sufficient to raise a fact issue as to whether Robinson had such possession of the vehicle as to make him a "borrower."

In our view the "possession" evidence in the Homette-U.S. Plywood unloading operation is not significantly different from such evidence in the Robinson-Belger unloading operation. In the latter instance a Belger truck driver parked the truck, and Robinson began to unload. The truck and trailer was not moved from the time the truck was parked for unloading until after the injury to James Crowder. There was no evidence that during such interval of time Robinson was any more than an unloader. There was no evidence that the truck or trailer had to be moved during and as a part of the unloading operation. In our opinion it is immaterial that the Belger truck driver stopped at the front gate of the Robinson yard, was then directed to drive to a particular area of the yard, and was thereafter told by Robinson's employees exactly where to spot the truck for unloading. During that interval of time the unloading operation had not yet begun; and it is possession during, and as a part of, the unloading operation that constitutes one a "borrower" under the insurance policy.

Therefore, we hold that there was no evidence raising a fact issue on the question of whether Robinson was a "borrower" of the Belger truck and trailer at the time of the injury to James Crowder.

Appellants' other point of error, that there was sufficient evidence to raise a fact issue as to whether the bulldozer operator, a general employee of Ramjinsky, was a borrowed servant of Robinson, is immaterial under our disposition of the question discussed above. Therefore, we do not consider such point of error.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

In their motion for rehearing appellants Robinson and Ramjinsky again urge that there was evidence raising a fact issue as to whether Robinson was a borrower of the Belger vehicle (the truck and trailer) at the time of the injury to James Crowder. They contend that the vehicle would have been moved as a part of the unloading operation, had it not been for Crowder's injury. Appellants emphasize that the complete operation of unloading the boxcar would not have ended until the boxcar had been pushed over against the other boxcars and that the undisputed evidence shows that, prior to such movement of the boxcar, the truck would have been moved out of the area. However, those facts do not show that such movement of the truck out of the area would have been part of the operation of unloading the boxcar from that vehicle. The undisputed evidence is that once the boxcar had been pushed clear of the truck by use of the bulldozer, the Belger truck driver would have driven the truck and trailer away from the unloading spot, not as a part of the complete operation of unloading the boxcar from that trailer and pushing the boxcar to its final resting place over against other boxcars, but to make room for the next truck and trailer to be moved into that same spot so that another boxcar could be unloaded.

There is evidence that after a boxcar was pushed off of a trailer the Belger truck driver always moved his truck and trailer out of the way before Robinson's employees pushed the boxcar to its final resting place. Even if it was necessary on this occasion for the truck and trailer to be moved out of the

way so that the bulldozer could be positioned to push the boxcar to its final destination, that fact does not constitute any evidence that Robinson had possession of the truck and trailer with the right to exercise dominion and control over them as a part of the complete unloading operation.

There being no evidence that Robinson had possession of the Belger vehicle during, and as a part of, the unloading operation, so as to constitute him a "borrower" under the automobile liability insurance policy, appellants' motion for rehearing is overruled.

Appellants' motion for rehearing overruled.