731 F.2d 255
 Arthur W. STURGEON, Plaintiff,
Aetna Casualty and Surety Company, Intervenor,
v.
STRACHAN SHIPPING COMPANY, Defendant-Third Party Plaintiff-Appellee,
v.
BANKERS AND SHIPPERS INSURANCE COMPANY OF NEW YORK, Third
Party Defendant-Appellant.
 No. 82-3229
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 May 3, 1984.
 Tooley, Waldmann & Weidner, John F. Tooley, Jr., Gretna, La., for third party defendant-appellant.
 Hailey, McNamara, McNamara & Hall, Laurence E. Larmann, Metairie, La., for defendant-third party plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges*.
 GEE, Circuit Judge:
 
 
 1
 We are asked today to formulate the test of Louisiana law applicable in insurance suits to determine when a loader or unloader may claim omnibus coverage as a "borrower" of the vehicle under the standard loading and unloading clause of the trucking company's policy--and asked to apply that test to the prototypical facts of this case. A panel of this Court has already performed both these tasks: in McDaniels v. Great American Atlantic and Pacific Tea Co., 602 F.2d 78 (5th Cir.1979), we adopted for Louisiana a test formulated by the Texas courts, see Liberty Mutual Insurance Co., 556 S.W.2d 242 (Tex.1977), and applied it to circumstances not distinguishable in any principled way from those of the instant case to bestow coverage on the unloader as a "borrower." Today we reaffirm the Liberty Mutual test as Louisiana law but override McDaniels' interpretation of that test to hold that the unloader is not a borrower on the facts of this case.
 
 
 2
 These are not disputed. We quote the panel opinion:
 
 
 3
 Pursuant to a contract, plaintiff Sturgeon, the owner-driver of a flatbed tractor-trailer, delivered a load of Texas cotton to defendant Strachan Shipping Company [Strachan] in New Orleans, presenting it for unloading at the time and place appointed. Arriving there, he handed over his bills of lading to the Strachan clerk, parked his rig where directed in Strachan's unloading area, and as directed readied its trailer for unloading by removing the tarpaulin and its fastenings. With this he was free to leave the area, since Strachan had complete control over the unloading process until it released the truck to Mr. Sturgeon. Although the trial court made no specific finding on the subject, Mr. Sturgeon testified without dispute that only he had right of access to his tractor, the Strachan employee-witnesses agreed, and Mr. Sturgeon does not here contend that anyone but he could move the rig once he parked it. While Strachan forklifts were unloading the bales without driving onto the trailer, a bale fell on Mr. Sturgeon.
 
 
 4
 When he [Sturgeon] sued Strachan for his resulting injuries [in federal court in Louisiana, invoking diversity jurisdiction], Strachan third-partied Mr. Sturgeon's insurance carrier,[1] [Bankers and Shippers], claiming omnibus coverage as a "borrower" of the entire rig.
 
 
 5
 Sturgeon v. Strachan Shipping Co., 698 F.2d 798 (5th Cir.1983).
 
 Bankers and Shippers policy reads:
 
 6
 ... Persons Insured (c) Any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
 
 
 7
 (1) a lessee or borrower[1] of the automobile....
 
 
 8
 Bankers and Shippers contends that while the Strachan unloaders may have been covered as "permissive users" under the former standard loading and unloading clause, they are excluded from coverage by the revision limiting coverage to one unloading a hired vehicle only if he is a "borrower of the automobile...." Accordingly, Bankers and Shippers denied coverage to Strachan. Bankers and Shippers cross-claimed against Strachan's insurer, American Mutual Liability Insurance Company (American Mutual) for contribution under a comprehensive general liability policy covering Strachan. This policy excluded coverage for "bodily injury--arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile--owned or operated by or rented or loaned to any insured--but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured."[2]
 
 
 9
 Finding herself bound by the McDaniels decision, the trial judge held that Strachan was a "borrower" under Bankers and Shippers' policy and Bankers and Shippers were therefore, as Strachan's omnibus insurer, liable for the entire claim against Strachan.[3]
 
 
 10
 Bankers and Shippers' third-party cross-claim against Strachan's insurers, American Mutual, for contribution was dismissed, the trial court reasoning logically that "borrow is the correlative of loan," so that the exclusion by the comprehensive general liability policy of "loaned" vehicles applied and Bankers was primary carrier. On Bankers and Shippers' appeal, a panel of this Court affirmed the trial court, stating that McDaniels determined the result. See Sturgeon v. Strachan Shipping Co., 698 F.2d 798 (5th Cir.1983) (Sturgeon I). Unlike the panel, sitting en banc we may reconsider McDaniels in light of Bankers and Shippers' arguments and, having done so we now adopt for Louisiana[4] the prevailing interpretation[5] of the standard "borrower" clause as a restriction of the previous "permissive user" terminology.
 
 
 11
 The seminal case construing this particular standard policy provision in our Circuit is Liberty Mutual, 556 S.W.2d at 243, written for the Supreme Court of Texas by then-Justice Sam Johnson, our colleague. Carefully reviewing recent developments in coverage afforded by automobile liability insurance, as reflected by the addition of the "borrowers only" limitation to the standard loading and unloading clause, the Liberty Mutual court held that whereas mere use (loading or unloading) of a vehicle sufficed to make a loader/unloader a "permissive user," both actual use and temporary possession of the insured's vehicle were required to render a loader/unloader a "borrower" under the amended standard clause.
 
 
 12
 The holding of Liberty Mutual, a Texas case, is, of course, not binding in this diversity case to which Louisiana law applies.[6] However, we find the reasoning of that case persuasive--so much so that we quote it at some length:
 
 
 13
 The court of civil appeals defined "borrower" as "someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes." ... Although we agree with the court of civil appeals' general definition of "borrower," we do not agree that Homette [the unloader] falls within it because there is no evidence that Homette had possession of the truck and trailer rig.... Prior to the addition of the loading and unloading endorsement to the automobile liability policy neither the automobile policy nor the standard liability policy defined which insurer had liability coverage for injuries sustained upon the premises of one who was injured under a general liability policy during the loading and unloading of a vehicle not owned or hired by the general liability insured. This question was settled by the later addition of the loading and unloading clause: the automobile liability insurer would provide coverage for injuries sustained as a result of negligence in the loading and unloading of the vehicle.... The inclusion of the loading and unloading clause expanded the coverage of the policy from that afforded by the phrase "ownership, maintenance or use ... of any automobile." ... Texas has adopted the broader majority view that "loading and unloading" embraces not only the immediate transfer of the goods to or from the vehicle, but also the complete operation of transporting the goods between the vehicle and the place from or to which they are being delivered. Under the complete operation approach the coverage provided by a loading and unloading clause extended to a broad group of persons who were not employees of the owner of the vehicle; the only requisite for coverage was that they were using (unloading) the truck with the consent of the owner.[7]
 
 
 14
 General rules of construction lead us to conclude that the policy exclusion for persons who were unloaders but not "borrowers" of the vehicle was intended to limit the insurer's liability for injuries resulting from acts of these nonemployees of the owner of the vehicle. The purpose of an exclusion is to take something out of the coverage that would otherwise have been included in it.... If, as American urges, ... [the mere act of unloading] was enough to bring Homette within the policy, the "borrower" requirement would be meaningless because one would need only to be an unloader to also be a "borrower." We decline to adopt American's construction of the policy. While unloading is a "use" of the vehicle, the conjunction "and" in the definition of "borrower" indicates that one must also have possession of the vehicle to be a "borrower." Possession connotes the right to exercise dominion and control over the truck and trailer. There is no evidence that Homette had this right.
 
 
 15
 Liberty Mutual, 556 S.W.2d at 244-45. (citations omitted) (emphasis added).
 
 
 16
 In subsequent cases, the Texas courts have applied the "use and possession" test of Liberty Mutual to bar coverage where, as here, the alleged "control" of the vehicle by the unloader was evidenced by telling the driver where to park and entering the vehicle only as necessary to remove the goods. See, e.g., Atlantic Mutual Insurance Co. v. Gulf Insurance Co., 596 S.W.2d 326 (Tex.Civ.App.--Texarkana 1980, no writ history); Robinson v. Excalibur Insurance Co., 598 S.W.2d 324 (Tex.Civ.App.--Houston 1980, writ ref'd, n.r.e.).
 
 
 17
 However, in McDaniels, 602 F.2d 78, a panel of this Circuit, while professing to apply the Liberty Mutual test, held that where the unloader told the driver where to park and then unload the truck, the unloader's "control over unloading operations show[ed] sufficient dominion and control over the truck to support the conclusion that [it] had temporary possession of the truck during unloading." Although the McDaniels court did not expressly state that it was applying Louisiana law--more accurately, making Louisiana law on this point--because the case was a diversity action brought in Louisiana and because, as here, the accident in McDaniels occurred in Louisiana,[8] the McDaniels court was necessarily applying the law of that state.[9] Thus, McDaniels is squarely on point here.
 
 
 18
 And we hold it is mistaken. McDaniels relied on two factual points to establish "possession": the fact that the unloader told the driver where to park and the fact that the unloading process involved entry into the trailer (using an electric forklift). In our view these facts, whether taken separately or together, do not suffice to establish such "dominion and control" as is indicative of "possession." First, construing the policy precisely, at the moment when the driver is told where to park, the unloading process has yet to begin, and it is possession during the unloading itself--not before or after--that renders an unloader a "borrower" under the amended, intentionally-restrictive clause. See Robinson, 598 S.W.2d at 327-28 (rejecting argument that directing driver to spot where unloading will occur constitutes possession). More simply, merely directing someone to park in a particular place on your property does not, in any customary sense, constitute borrowing his vehicle--one scarcely views the proprietor of a parking lot as a "borrower."
 
 
 19
 Second, while the fact that the process of unloading necessitates entry into the vehicle does establish that the unloader is "using" the vehicle, it does not simultaneously establish the unloader's "possession."[10] If it did, then "one would only need to be an unloader to be a borrower"--an interpretation specifically rejected by the Texas courts in Liberty Mutual, see 556 S.W.2d at 245, and rejected by us today in favor of the Liberty Mutual test as developed by the Texas courts.
 
 
 20
 The facts of today's case satisfy the "use" prong of the Liberty Mutual test we adopt today, but fail to satisfy the "possession" prong. The actions alleged to constitute possession, or "dominion and control," are that Strachan's employees directed Sturgeon to a parking site and that Strachan's employees controlled Strachan equipment during an unloading process which involved entry into the truck. We find this evidence demonstrates "use"--in connection with unloading--but not "possession."
 
 
 21
 The significance of our decision today for both the federal courts and those of Louisiana make it appropriate for us to set out some guidelines regarding what constitutes that control of a vehicle which will render a loader/unloader a "borrower" covered by this standard clause:
 
 
 22
 Control of a movable object intrinsically involves power to govern its location. In the instance of a vehicle--an object whose purpose is to provide transportation--"control" of the vehicle during any given period must include power to move it during that space of time. Thus, to have control of a vehicle during loading/unloading one must have the power to move the vehicle during the loading/unloading process itself.
 
 
 23
 We do not now attempt to compose an exclusive list of the various means by which a "borrower" may have the necessary power to move an allegedly borrowed vehicle; such mapping of the precise factual contours of "control" in the context of particular situations is an incremental endeavor more appropriate for the federal district courts and the courts of Louisiana than for our en banc discussion--which at this point would be unduly speculative.
 
 
 24
 We agree with the district court that "borrow is the correlative of loan," or more precisely, that the two terms in these standard insurance clauses must be construed in complementary fashion. Having determined that Strachan is not a "borrower" of the truck under the omnibus clause of Bankers and Shippers' policy, we accordingly hold that the vehicle was not "loaned" to it under the terms of American Mutual's comprehensive policy. We remand to the district court for such proceedings as may be necessary in light of this holding.
 
 
 25
 REVERSED and REMANDED.
 
 
 26
 RUBIN, Circuit Judge, with whom POLITZ, TATE, JOHNSON and HIGGINBOTHAM, Circuit Judges, join, dissenting:
 
 
 27
 The intricate course this case has taken in the two years since the notice of appeal was filed, on April 5, 1982, should itself demonstrate why we ought rarely, if ever, to grant en banc rehearing of a diversity case. The majority overturns the McDaniels view of how a Louisiana court would read an insurance contract in the dim light of a Texas case. This is not the way we should handle the vehicles parked with us by diversity jurisdiction. If McDaniels was wrong, the Louisiana courts should and will inform us in due course. The Louisiana Supreme Court's denial of our certification indicates that it thought either that the McDaniels interpretation was correct or that straightening us out was not worth the effort. That being so, I would simply vacate the en banc certification, reinstate the panel opinion, and resolve, once again, to resist hearing en banc cases that turn entirely on state law. See Edwards Co., Inc. v. Monogram Industries, 730 F.2d 977 (5th Cir.1984); Nash v. Estelle, 597 F.2d 513 (5th Cir.1979) (en banc), Rubin, J., dissenting.
 
 
 
 *
 Judge Davis did not participate in this decision
 
 
 [1]
 Actually and inconsequentially for our purposes that of his employer, which provided his coverage
 
 
 [1]
 The policy nowhere defines the term "borrower."
 
 
 [2]
 (Emphasis added.) American Mutual also covered Strachan under a Business Automobile Policy which provided that for any covered automobile not owned by the insured, the insurance provided by this policy is excess over any other collectible insurance
 
 
 [3]
 All other parties were disposed of before trial. Following jury selection, the plaintiff's case was settled for $150,000, reserving defendants' rights inter sese. Thereafter, the case between Strachan, Bankers and Shippers, and American Mutual was tried without jury
 
 
 [4]
 We confess some trepidation at rewriting Louisiana law on a point on which state courts have been completely silent. However, our effort to certify this question to the Louisiana Supreme Court met with refusal; we are thus constrained to formulate Louisiana's test
 Having taken the appeal en banc following publication of the original panel opinion, our court by order of August 25, 1983, remanded to the panel to permit certification to the Supreme Court of Louisiana. After consultation with counsel, the panel prepared an opinion seeking the assistance of that court. 721 F.2d 144 (5th Cir.1983). A month and some weeks later, the Louisiana court responded to our request as follows, 444 So.2d 1234:
 February 3, 1984
Certification denied.
 HTL
 PFC
 WFM
 JLD
 FAB
 JCW
 DIXON, C.J., would grant and answer both questions with "No."
 We therefore voted the appeal en banc again and dispose of it as best we can.
 
 
 [5]
 See Sturgeon I, 698 F.2d at 799-800, 800 n. 35 and cases cited therein
 
 
 [6]
 Although the policy was issued in Texas to a Texas insured, the accident happened in Louisiana, and the Louisiana choice of law rule would apply Louisiana law to interpretation of the policy that "took effect" in Louisiana. See Jahrman v. Valley Air Park, Inc., 333 So.2d 712, 713 (La.App.1976); Sutton v. Langley, 330 So.2d 321 (La.App.1976)
 
 
 [7]
 Essentially the same broad coverage obtained under the "commonsense" approach adopted by the Louisiana Supreme Court in Fertitta v. Palmer, 252 La. 336, 211 So.2d 282, 285-86 (1968)
 
 
 [8]
 See note 4, supra
 
 
 [9]
 Two passages in the opinion indicate that the McDaniels court believed itself to be doing so: in discussing the general principles of insurance construction, the court cites Louisiana cases exclusively; 603 F.2d at 81; and the court devotes a footnote specifically to distinguishing one case "because it is the only Louisiana case cited," 603 F.2d at 81-2 n. 3
 
 
 [10]
 An examination of the specific facts on which the McDaniels court relied demonstrates that rather than indicating control of the allegedly borrowed truck, they merely indicate control over A & P's own equipment: "A & P determined where along the dock the truck would be unloaded, who would unload it, what unloading equipment would be used, where the unloaded cargo would be placed on the dock, and when to release the truck to the driver." McDaniels, 602 F.2d at 81. Control of one's own equipment and personnel is irrelevant to the issue of whether one is "borrowing" a vehicle belonging to another in a loading/unloading situation