837 A.2d 1096

ATLANTIC MUTUAL INSURANCE COMPANY, AS ASSIGNEE OF RAYMOND MAJEWSKI, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, v. PALISADES SAFETY AND INSURANCE ASSOCIATION, DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND MOTOR CLUB OF AMERICA INSURANCE A/K/A PRESERVER INSURANCE COMPANY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 12, 2003—Decided July 22, 2003.

601

Before Judges HAVEY, A.A. RODRÍGUEZ and WELLS.

*Kenneth R. Rothschild* argued the cause for appellant (*Golden, Rothschild, Spagnola, Lundell, Levitt & Boylan,* attorneys; *Mr. Rothschild,* of counsel; *Audrey L. Shields,* on the brief).

*Brian D. Barr* argued the cause for respondent (*Cooper, Perskie, April, Niedelman, Wagenheim & Levenson,* attorneys; *Mr. Barr,* of counsel; *Walter J. LaCon,* on the brief).

The opinion of the court was delivered by

RODRÍGUEZ, A. A., J.A.D.

This is the second time that this matter comes before us. In *Atlantic Mut. Ins. Co. v. Palisades Safety and Ins. Ass'n,* No. A–219–99T5 (App.Div. Jan. 8, 2001), we decided, among other things, that Palisades Safety and Insurance Association (Palisades), must provide liability coverage to Raymond Majewski for injuries sustained by Cedar A. Johnson in an automobile accident. We remanded the matter to determine whether Atlantic Mutual Insurance Company (Atlantic), must also provide coverage to Majewski. If so, the Law Division judge was to decide whether Palisades' and Atlantic's coverages are primary, or excess. The judge found that Atlantic must provide coverage. The judge also determined that Palisades' and Atlantic's coverage is to be pro-rated according to the respective policy limits. We affirm.

The facts are undisputed. On August 29, 1995, Johnson was operating his wife's vehicle when he struck an automobile operated by Samuel Finn. Finn was injured. Johnson was accompanied by a co-worker, Daniel LaVienna. Both men were employed by Cambridge Frozen Bakery Products (Cambridge). They were returning from the home of their superior, Plant Manager Raymond Majewski, who had sent them to his home to retrieve his prescription medicine. Neither man "punched out" but remained "on the clock." Thus, they were "working" for Cambridge during the trip.

In a deposition, Majewski testified that he sent Johnson and LaVienna on this errand because he was the only manager on the shift and could not leave the plant. According to Majewski, he and Cambridge's president often used their employees for similar tasks. Johnson corroborated that he had made similar errands for his superiors.

Finn sued the Johnsons, Cambridge, and Majewski for negligence. Cambridge sent the complaint to Atlantic, its liability insurance carrier. Atlantic defended the action on Cambridge's behalf. Majewski notified Atlantic of the suit against him. Atlantic denied coverage for Majewski. Majewski also submitted the complaint to two other carriers: Preserver Insurance Company (Preserver), his homeowner's insurance carrier, and Palisades, his personal automobile insurance carrier. Preserver and Palisades denied coverage.

Finn settled with the Johnsons and Cambridge for $790,000. The Johnsons' insurer paid $100,000 and Atlantic, $690,000. Cambridge and Majewski entered into a consent judgment. Majewski agreed to a $690,000 judgment against him in order to satisfy Cambridge's indemnity claim. In return for an agreement not to execute on the consent judgment, Majewski assigned to Atlantic and Cambridge all of his rights against Preserver and Palisades. As Majewski's assignee, Atlantic filed the present lawsuit against Preserver and Palisades. Preserver and Palisades moved successfully for summary judgment. We affirmed as to Preserver, but reversed as to Palisades, concluding that the Palisades policy provided coverage. We remanded for further proceedings.

On remand, the judge found that both policies provided coverage and ordered Palisades to reimburse Atlantic for one-half of the Finn settlement. Upon reconsideration, the judge ordered that Palisades and Atlantic provide coverage on a pro rata basis according to their limits of coverage. He ordered Palisades to reimburse Atlantic $138,000, or twenty percent of the settlement.[1]

Atlantic appeals contending that: (1) its policy does not provide coverage to Majewski; (2) Palisade's "other insurance" clause does not apply because there is no "other insurance;" and (3) the judge erred by finding that Atlantic's policy provides liability coverage to Majewski. Palisades cross-appeals contending that Atlantic's policy provides primary coverage.

---

[1] Atlantic's policy limit is $1,250,000 and Palisades's limit is $250,000.

The determination of whether an individual is an insured under an insurance policy is a matter of law to be decided by the court. *National Union Fire Ins. v. Transportation Ins. Co.*, 336 *N.J.Super.* 437, 443, 765 *A.2d* 240 (App.Div.2001). The court should interpret the policy "according to its plain and ordinary meaning." *Progressive Cas. Ins. v. Hurley*, 166 *N.J.* 260, 272–73, 765 *A.2d* 195 (2001). However, the "policy should be construed to comport with the insured's reasonable expectations of coverage." *Id.* at 274, 765 *A.2d* 195 (citing *Gibson v. Callaghan*, 158 *N.J.* 662, 669–71, 730 *A.2d* 1278 (1999)). Therefore, the court should only enforce those restrictions or terms in the policy that are consistent with the insured's "objectively reasonable expectations." *Ibid.*

With those principles in mind, we concur with the judge that the Atlantic policy provides coverage to Majewski. The Atlantic policy provides:

*1. WHO IS AN INSURED*

*The following are "insureds:"*

*a. You for any covered "auto;"*

*b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:*

*(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own;*

*(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household;* . . . .

"You" is Cambridge, the named insured. The proofs support two critical findings by the judge. First, that Majewski was using, with Cambridge's permission, Johnson's auto. Second, that Johnson's auto was borrowed by Cambridge. It is self-evident that neither exception (1) or (2) to section b applies here. Therefore, Majewski has liability coverage for the Finn accident under the unique circumstances of this case.

We have already held that as a matter of law Majewski was in effect "using Johnson's vehicle . . . and, thus, through Johnson, was operating Johnson's vehicle." *Atlantic Mut. Ins. v. Palisades Safety and Ins. Ass'n*, No. A–219–99T5 (App.Div. Jan. 8, 2001).

Therefore, we turn to the second finding, *i.e.,* that Cambridge was borrowing Johnson's auto. The meaning of the term "borrow" within the context of an insurance policy has been considered by courts in New Jersey on two occasions. In *F & M Schaefer Brewing Co. v. Forbes Food Div.,* 151 *N.J.Super.* 353, 376 *A.*2d 1282 (Law Div.1977), the judge found that a person becomes a borrower when he or she "assume[s] a certain amount of control, dominion or power over the object being borrowed." *Id.* at 362, 376 *A.*2d 1282. We adopted this analysis in *National Union Fire Ins. v. Transportation Ins. Co., supra,* 336 *N.J.Super.* at 447, 765 *A.*2d 240. Along with the Law Division's definition of the term "borrower," we adopted the Fifth Circuit's definition for the term as analyzed in *Sturgeon v. Strachan Shipping Co.,* 731 *F.*2d 255 (5th Cir.), *cert. denied sub nom, Strachan Shipping Co. v. Bankers & Shippers Ins. Co. of N.Y.,* 469 *U.S.* 883, 105 *S.Ct.* 251, 83 *L.Ed.*2d 188 (1984), and the Texas Supreme Court's definition as stated in *Liberty Mut. Ins. v. American Employers Ins.,* 556 *S.W.*2d 242 (Tex.1977). *Ibid.*

The *Sturgeon* court adopted the "use and possession" test as applied in *Liberty Mut. Ins.* to determine whether a party is a "borrower." *Sturgeon, supra,* 731 *F.*2d at 259. Under the test, a person is a "borrower" if he or she obtained possession of the vehicle. *Ibid.* Possession is established by having dominion or control. *Ibid.* Thus, the "user" of the vehicle must also have the simultaneous authority to move the vehicle in order to be considered a "borrower." *Ibid.*

We recognize that the analysis adopted in *National Union Fire Ins.* addressed the term "borrower" as used in the "loading and unloading" context, but nevertheless find the adopted analysis to apply here. The record reflects that Cambridge and its president used Johnson and three other employees to run their errands. Although Majewski's use of Johnson's vehicle was limited, the record reflects that Cambridge's use of its employee's automobiles was a "daily occurrence." Johnson admitted that he believed that the performance of these tasks were a part of his job. Indeed,

when running errands, the employees remained "on the clock" and "receiv[ed] pay." Majewski testified that Cambridge paid the employees because they considered the errands to be "company business." In fact, after Johnson's accident Cambridge changed its policy and required the employees to "punch out." When considering these facts, it is clear that Cambridge had substantial dominion or control over Johnson's vehicle. Accordingly, Cambridge "borrowed" the Johnson vehicle and permitted Majewski to "use" it by providing him with the authority to send Cambridge employees on errands. Thus, Atlantic's policy provides liability coverage to Majewski.

On cross-appeal, Palisades argues that Atlantic provides primary coverage to Majewski, and that it provides only excess coverage. Therefore, Palisades contends that it does not have to reimburse Atlantic because the Finn settlement is well within the Atlantic policy's $1.25 million limit. We disagree.

Atlantic's other insurance clause reads:

*SECTION IV—BUSINESS AUTO CONDITIONS*

  *B.   GENERAL CONDITIONS*

*5.   OTHER INSURANCE*

*a.   For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .*

*c.   Regardless of the provisions of paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract."*

*SECTION V—DEFINITIONS*

  *F.   "Insured Contract" means:*

*5.   That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

Palisades argues that this language means that Atlantic must provide primary coverage for any liability assumed under contract, and that includes Majewski's liability. Yet, the policy clearly states that the coverage is primary if Cambridge assumes liability

under any contract or agreement, i.e., an insured contract. Majewski's tort liability was incurred by law, not by an insured contract. Thus, Atlantic's policy does not provide primary coverage.

Palisades further argues that the judge initially found that Atlantic provided primary coverage, and that finding becomes "the law of the case." We reject Palisades' law-of-the-case argument.[2] The trial court's order dismissing Atlantic's claim did make a finding that the Atlantic policy provided primary coverage. However, in reversing that order, we noted that the issue of primary and excess coverage had not been addressed. Therefore, the earlier finding was implicitly reversed. The "law of the case doctrine" did not apply and Atlantic appropriately filed a cross-motion to alter or amend the judge's order.

Both parties agree that if Majewski is an insured under Atlantic's policy and if that coverage is not primary, then the "other insurance" clauses of both policies are applicable. Thus, Palisades is required to reimburse Atlantic $138,000.

Affirmed.

---

[2] The "law-of-the-case" doctrine stands for the proposition that an unreversed decision of law or fact made during the course of litigation settles that question for all subsequent stages of the suit. *State v. Reldan,* 100 *N.J.* 187, 203, 495 *A.2d* 76 (1985). The policy being that once an issue is litigated and decided, courts should avoid relitigating that issue. *Sisler v. Gannett Co.,* 222 *N.J.Super.* 153, 159, 536 *A.2d* 299 (App.Div.1987), *certif. denied,* 110 *N.J.* 304, 540 *A.2d* 1283 (1988).