Richard F. Kitheeh, J.
This is a declaratory judgment action brought by Broome County Co-Operative Fire Insurance Company for a declaration that it is not required to defend a liability claim against its insured Marion Pilcher. For the most part, the facts of this case are undisputed.
A short time prior to August 2, 1971, Mrs. Pilcher invited a friend, Grace Miller, to spend the afternoon of August 2 at the Pilcher home and to attend a church picnic later that evening. Mrs. Miller is a cripple and is unable to move about without a wheelchair. The two women agreed that Mrs. Pilcher should drive to the Miller home and they would then return to the Pilcher home in Mrs. Miller’s car. The Miller car was also to be used to transport the women to the picnic. Mrs. Miller’s car was used because it had wide doors which made it easier for her to get in and out. In preparation for the visit, Mrs. Pilcher’s *589 husband constructed a small ramp over the front porch stairs of their home in order to facilitate Mrs. Miller’s entry into the house. The women arrived at the Pilcher home early that afternoon and Mrs. Pilcher assisted Mrs. Miller from the car and after a brief interval attempted to wheel or pull her up the ramp. Somehow Mrs. Pilcher lost control of the wheelchair and as a result Mrs. Miller fell to the ground sustaining various injuries. Thereafter, Mrs. Miller commenced a suit for damages against Mrs. Pilcher.
Three insurance companies were notified of the impending action: Allstate, insurer of Mrs. Pilcher’s auto; Aetna, insurer of Mrs. Miller’s auto; and Broome County Co-Operative, insurer of Mrs. Pilcher’s home under a homeowner’s policy containing a liability endorsement.
Broome County Co-Operative claims that the accident resulted from the ‘ ‘ unloading ’ ’ of Mrs. Miller’s car. Therefore, Broome County Co-Operative argues the two automobile insurers are primarily liable and its coverage is effective only after those two policies have been exhausted.
Defendants, Allstate and Aetna, however, maintain that the injuries did not occur during the process of “ unloading ” an automobile within the meaning of that term and their coverage, therefore, is neither primary nor secondary. Aetna further contends that even if the accident did so occur, its policy limitation on liability arising out of ‘ ‘ loading and unloading ’ ’ excludes coverage in this case.
The main question for consideration by this court is whether the doctrine of “ loading and unloading ” applies to these facts. The defendants rely heavily upon the fact that all the New York cases on this point deal exclusively with commercial pickups and deliveries. The court is not impressed by this argument and notes that there are no cases which exclude ‘ ‘ persons ’ ’ as opposed to “ goods ” from this doctrine. The obvious explanation is that the problem has thus far arisen only in a commercial context.
Granted one does not usually think in terms of “ loading and unloading ’ ’ a person from an automobile, but this case presents a unique set of facts. Being crippled, Mrs. Miller is not able to “ alight ” from a vehicle under her own power as a normal healthy person would. She requires the assistance of another person and a wheelchair. In fact, without the wheelchair it would be necessary for someone to pick her up and carry her. Certainly if this were the case, it would not be difficult to find that Mrs. Pilcher had ‘1 unloaded ’ ’ her from the ear. The wheel *590 chair in this case is similar to a dolly used to facilitate the loading and unloading of commercial goods.
This operation closely resembles the removal of a patient on a stretcher from an ambulance. When this situation has arisen in other States, courts have had no difficulty in finding that a person can be “unloaded” from an automobile. (See Elliott v. Firemen’s Ins. Co., 111 Ga. App. 49; Hinton & Son v. Employers’ Liab. Assur. Corp., 166 Tenn. 324.) In Hinton & Son, the court held that injuries sustained by a person while being carried on a stretcher did not arise out of the ‘1 loading ” of an ambulance, but only for the reason that the accident occurred too far away from the ambulance. The court indicated that had it happened in closer proximity to the vehicle, a different result would have followed.
It is a well-settled rule in this State that exceptions and limitations in insurance contracts are to be strictly construed against the insurer. (Silverstein v. Continental Cas. Co., 23 A D 2d 801, affd. 17 N Y 2d 845; Sincoff v. Liberty Mut. Fire Ins. Co., 11 N Y 2d 386.) Here defendants have not limited their “ loading and unloading ’ ’ coverage in any way. Bather, they have asked the court to construe the clause as applying only to commercial pickups and deliveries. Exceptions and limitations in insurance policies must be clearly and unambiguously stated. (Taylor v. United States Cas. Co., 269 N. Y. 360, 363.) This court will not supply words of limitation to an insurance contract where the insurers themselves have not seen fit to do so. (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442, 447.)
New York follows the “completed operation” doctrine in applying ‘ ‘ loading and unloading ’ ’ clauses in insurance contracts. Under this rule the term “loading and unloading” embraces ‘ ‘ not only the immediate transference of the goods to or from the vehicle, but the ‘ complete operation ’ of transporting the goods between the vehicle and the place from which or to which they are being delivered. ’ ’ (Wagman v. American Fid. & Cas. Co., 304 N. Y. 490, 494.) In other words, an unloading operation is not completed until the “ goods ” to be delivered have reached their ultimate destination. (Mohawk Val. Fuel Co. v. Home Ind. Co., 8 Misc 2d 445.) An accident or injury must occur before this point is reached and be causally connected with the process of unloading, in order to be covered by a “ loading and unloading ” clause. (Brooklyn Eastern Dist. Term. v. Phoenix of Hartford Ins. Co., 26 A D 2d 627.)
WGiat was the “ complete operation ” of unloading as intended by Mrs. Miller and Mrs. Pilcher? The testimony at examina *591 tions before trial discloses that according to a prearranged plan Mrs. Pilcher volunteered to drive to Mrs. Miller’s house, to take her from the house to the Miller car, then to drive her to the Pilcher home, and finally to take her into the house. In anticipation of this sequence of events Mrs. Pilcher had her husband construct a ramp to facilitate moving Mrs. Miller into the house. Prior to the trip Mrs. Pilcher advised Mrs. Miller that a ramp would be available for this purpose.
As further evidence of their ultimate intentions, the two women discussed abandoning their plan and waiting until Mr. Pilcher came home to help her up the ramp. Mrs. Miller: “ How long before your husband and son would be here,” and she said it would be about two hours, and I guess we had planned on me going up and being in her house and he’d made the ramp and all like that, and she says, ‘ ‘ Hnless you want to just sit under a tree,” and I said, “ Well, we had planned on me going in, I guess, he’d made the ramp, so ”. Clearly, the intention of the parties was that the entire operation would include and be completed by taking Mrs. Miller up the ramp and into the house.
It is not sufficient for the plaintiff merely to show that the accident occurred during the time period covered by loading and unloading. The facts must also demonstrate that the injury resulted from some act or omission by defendant’s insured which was related to that process. (Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. R. Co., 18 A D 2d 460; Employers Mut. Liab. Ins. Co. v. Aetna Cas. & Sur. Co., 7 A D 2d 853.) The only explanation given for the mishap is that Mrs. Pilcher was unable to maintain her footing and as a result she lost control of the wheelchair. There was no testimony that the ramp was negligently constructed or that it was inherently defective. Mrs. Pilcher did not trip nor was there any substance on the ramp which may have caused the wheelchair to slip. The most probable explanation for the accident is that Mrs. Pilcher either undertook that which she was physically incapable of doing or neglected to take precautions necessary to protect Mrs. Miller. Her actions may have constituted negligence, but that is not to be decided here. At this point it is sufficient for the court to find that the accident was caused by some act or omission on the part of Mrs. Pilcher which was incidental to the unloading process.
There is testimony to the effect that the women stopped to chat for 20 minutes in front of the Pilcher home before attempting to take Mrs. Miller inside. The causal relationship between the accident and the movement of Mrs. Miller, from the vehicle to the house was not broken by this brief delay; The parties knew *592 the “ unloading ” operation would not be completed as planned until Mrs. Miller was safely inside the Pilcher house. There is nothing in any of the testimony to suggest that the ‘ ‘ ultimate destination ’ ’ of this trip was the Pilcher front lawn. To the contrary, both women expressed concern during this 20-minute interlude over their ability to complete the operation. Deciding not to forego their original plan, Mrs. Pilcher attempted to take Mrs. Miller up the ramp. Furthermore, there is no evidence that this brief delay caused the accident or that it would not have occurred in its absence. The conclusion, therefore, is that the accident occurred during the “ unloading ” of an automobile and was causally related to that process.
The Aetna automobile insurance policy issued to G-race Miller excludes coverage for liability arising out of the loading and unloading of an automobile unless the claim is made against “the named insured”, a “lessee or borrower of the automobile or an employee of either of them or of the named insured.” Since Mrs. Pilcher is not the named insured, a lessee, or an employee, the policy will cover her liability only if she is a “ borrower ” of the vehicle. A “ borrower ” of an automobile has been described as one who ‘ ‘ uses the car for his own business or pleasure, and not for any purpose in which the owner is interested.” (Gochee v. Wagner, 257 N. Y. 344, 347.) In common everyday language the term ‘ ‘ borrower ’ ’ is generally understood to mean someone who has, with the permission of the owner, possession and use of the property of another for his own purposes.
The facts here indicate that the Miller car was used primarily for Mrs. Miller’s benefit. The purpose of the entire outing was to provide the crippled Mrs. Miller with an opportunity to get out of the house. As a favor, Mrs. Pilcher drove to the Miller home to pick up Mrs. Miller. It was agreed that the Miller car should be used for the convenience of Mrs. Miller and because it had wider doors thus facilitating Mrs. Miller’s entry and exit. Mrs. Pilcher had her own car and the use of the Miller car worked no special advantage for her. In no sense of the word can it be said that Mrs. Pilcher was a “ borrower ” of the Miller car. Rather, she used the Miller car for the main purpose of benefiting its owner, Mrs. Miller. Therefore, the Aetna policy provides neither primary nor secondary coverage for Mrs. Pilcher’s liability.
The Allstate policy issued to Mrs. Pilcher provides her wtith coverage for liability arising out of the “ use, including loading and unloading of * * * anon-owned automobile,” provided *593 that such use is with the permission of the owner. There is no question that Mrs. Pilcher had express authorization from Mrs. Miller to operate the car. Coverage, however, is limited in the case of “non-owned ” vehicles to “ excess insurance over any other collectible insurance.”
The plaintiff, Broome County Co-Operative, has a more limited coverage. Its “ other insurance ” clause states that “ with respect to a loss arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile * * # at the premises or the ways immediately adjoining * * * this insurance shall not apply to the extent that any valid and collectible insurance whether on a primary, excess or contingent basis, is available to the insured.”
Accordingly, the court finds that in the absence of any other collectible insurance, Allstate, as excess insurer, becomes the primary insurer and has a duty to defend the negligence action against Mrs. Pilcher. The Broome County Co-Operative policy affords coverage only after the limits of the Allstate policy have been exhausted. Furthermore, Broome County Co-Operative is entitled to judgment against Allstate for the cost of the defense in the negligence action to date, including reasonable legal fees incurred in that defense.