Ralph E. CHEVALIER, Plaintiff–
Appellant, Cross–Appellee,

v.

RELIANCE INSURANCE COMPANY
OF ILLINOIS, Defendant–Appellee,
Cross–Appellant.

No. 91–4184.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1992.

Rehearing Denied Feb. 27, 1992.

Robert G. Nida, Gold, Weems, Bruser, Sues & Rundell, Alexandria, La., for plaintiff-appellant-cross-appellee.

Katherine M. Loos, Jeansonne & Briney, Lafayette, La., for defendant-appellee-cross-appellant.

Before HIGGINBOTHAM and BARKSDALE, Circuit Judges, McBRYDE,* District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this diversity case Ralph Chevalier urges that a jury's award of damages for personal injury was inadequate and was reduced by improper credits of sums paid by insurers. Finally, Chevalier contends that the district court erred in not awarding attorneys' and expert witness fees under Louisiana law. Reliance Insurance of Illinois cross-appeals arguing that Reliance's policy did not insure Chevalier.

We find no merit in any of these contentions and affirm.

## I.

Chevalier was injured while hauling material as a contract driver for L.H. Bossier, Inc. His dump truck overturned in an accident with a car driven by Jerry D. Walters. Chevalier sued Reliance Insurance Co., Bossier's insurer.

Reliance moved for summary judgment, denying that its policy provided uninsured motorists coverage or liability insurance to Chevalier. Chevalier moved for partial summary judgment, asserting that it did. The court agreed with Chevalier.

After a three-day trial, the jury returned a special verdict finding that Walters' negligent driving was the sole cause of the accident. The jury awarded Chevalier $10,000 for his past pain and suffering and $26,000 for past wage loss. With Chevalier's stipulated medical expenses of $49,373.54, his total recovery was $85,373.54. The judgment credited Reliance $49,373.54 for the medical expenses and $26,000 for compensation benefits it had paid. Finally, Reliance received a credit for $6,658.76 paid to Chevalier by Walters' liability carrier, Southern Security, bringing Chevalier's net recovery down to $3,349.24. The district court denied Chevalier's motion for a new trial on damages.

At trial, Reliance presented evidence that Chevalier had earlier injured his shoulder, and at most, the accident exacerbated his old injury. Hospital records of Chevalier's visit eleven days before the accident record an injury to his shoulder a year earlier. Eighteen days after the accident, Paul Davis, M.D. examined Chevalier's shoulder. Dr. Davis diagnosed an inflamed rotator cuff, probably pre-existing and exacerbated by the accident. Shoulder x-rays a month after the accident indicated that the disorder was chronic before the accident.

Reliance also presented expert and fact testimony that Chevalier's back injury was unrelated to his accident. Chevalier did not complain about back pain until he saw a chiropractor on June 9, 1986, more than five months after the accident. Dr. McDaniels, Reliance's expert, testified that a disc injury would have been painful immediately.

Glenn Hebert, a vocational specialist, and Dan Cliffe, a C.P.A., testified that injuries suffered by Chevalier did not significantly reduce his earning capacity.

## II.

Chevalier raises seven points of error on appeal. Two of these points quarrel with the amount awarded for past and future damages: he asserts that the jury erred in awarding a "take nothing" verdict for future lost wages and future pain and suffering and awarded too little for past pain and suffering and past lost wages.

* District Judge of the Northern District of Texas, sitting by designation.

Chevalier contends in his remaining five points that the district court erred (i) in not awarding him penalties and attorneys' fees under La.R.S. 22:658; (ii) in allowing Reliance to claim sums paid to Chevalier for workers' compensation without intervening and (iii) in not apportioning Chevalier's attorneys' fees under *Moody v. Arabie*, 498 So.2d 1081 (La.1986); (iv) in allowing Reliance to reduce its damages by amounts paid by Walters' carrier; and (v) in not awarding expert witness fees.[1]

■ We need not decide whether the policy by its terms extended uninsured motorists coverage to Chevalier. We find that because the policy gave liability coverage to Chevalier, and Bossier did not explicitly waive in writing all uninsured motorists coverage, under La.R.S. 22:1406(D)(1)(a), Chevalier was covered by uninsured motorists insurance, regardless of policy terms. Under La.R.S. 22:1406(D)(1)(a), a person with liability coverage is covered by uninsured motorists insurance to the same extent, absent written waiver by the named insured.[2]

Part IV(D) of the policy contains the following list of liability insured:

D. WHO IS INSURED.

1. You are an insured for any covered auto.

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow ...

Chevalier contends that he is insured against liability under the policy because Bossier, his employer, "borrowed" his truck when Chevalier was hauling under contract. Reliance contends that Bossier "borrowed" Chevalier's truck only if Bossier physically controlled it. We agree with Chevalier that Bossier "borrowed" his truck within the meaning of Part IV(D)(2) and that Chevalier is therefore covered by uninsured motorists insurance under La. R.S. 22:1406(D)(1)(a).

*Schroeder v. Bd. of Supervisors of Louisiana University*, 577 So.2d 1074 (La.App. 1 Cir.1991), construed an identical clause: Part IV(D)(2) of the policy provided that "[a]nyone else is an insured while using with your permission a covered auto you own, hire, or borrow." A student who was injured while driving his father's car to get ice for a school function contended that LSU had "borrowed" his father's car. The *Schroeder* court agreed. It held that a vehicle is "borrowed" within the meaning of Part IV(D)(2) "when it is being used in furtherance of the borrower's interests and the borrower purposefully derives a benefit from the use of the vehicle." *Schroeder*, 577 So.2d at 1082.

We believe that the *Schroeder* court's analysis captures Louisiana law. It is supported by the use of the term "borrow" in other parts of the contract. The term "borrowed" appears in an exception to coverage contained in Part IV(D)(2)(a) of the policy, which excludes from liability coverage:

a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.

The implication is that the named insured can "borrow" a car used by an owner-employee rather than by the named insured. This is because there is no need to be exempted from coverage unless one is "using ... a covered auto" in the first place. Therefore, "a borrowing can occur whenever the named insured properly gains the use of a third party's ... vehicle

---

1. Chevalier moved to dismiss Reliance's cross-appeal for lack of jurisdiction. Chevalier argues that Reliance is attempting to appeal an unappealable interlocutory order that does not comply with Fed.R.App.P. 3(c). Chevalier's contentions are meritless. The appeal is from the final judgment.

2. La.R.S. 22:1406(D)(1)(a)(i) provides that:
"(1)(a)(i) No automobile liability insurance ... shall be delivered or issued for delivery in this state with respect to any motor vehicle ... unless coverage is provided therein ... in not less than the limits of bodily injury liability provided by the policy ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, ... the coverage or selects lower limits."

for its purposes, no matter who has dominion or control of the car." *Schroeder*, 577 So.2d at 1081.

Reliance relies on *Sturgeon v. Strachan Shipping Company*, 731 F.2d 255 (5th Cir.) (en banc), *cert. denied*, 469 U.S. 883, 105 S.Ct. 251, 83 L.Ed.2d 188 (1984), for the proposition that a borrower must physically control the borrowed vehicle. *Sturgeon* interpreted a trucking company's insurance policy provision excluding unloaders and loaders from liability coverage unless they were "borrowers" of the truck. The *Sturgeon* court relied on a Texas decision, *Liberty Mutual Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242 (Tex. 1977), to hold that the unloaders of a truck were not "borrowers" of the truck unless they took actual possession of the truck that they were loading or unloading.

The definition of "borrowers" adopted by the *Sturgeon* court was based on the peculiar history, purpose, and context of standard loading/unloading exclusions. Reliance offers no reason specific to the particular clauses here to give a similar narrow construction to the term "borrow," a term appearing in a different part of a standard insurance policy. As we have noted, the context of Part IV(D)(2) indicates that "borrow" should be given a broader reading. We are persuaded that under Louisiana law Chevalier's truck was borrowed by Bossier giving Chevalier liability coverage.

■ Reliance finally contends that Chevalier is an "employee" of Bossier and within Part IV(D)(2)(a) which excludes from coverage "[t]he owner of a covered auto [the named insured] ... borrow[s] from one of [its] employees...." Reliance's own motion for summary judgment describes Chevalier as "an independent trucker" who hauls for companies like Bossier "on a contract basis." It is possible to read the term "employee" to cover Chevalier's relationship with Bossier, but not with confidence. It is not apparent that the term "employee" was intended to apply to independent contractors like Chevalier. We think that Louisiana law would invoke the principle that ambiguous terms in an insurance policy are to be construed against the insurer and in favor of the party claiming coverage. La.Civ.Code art. 2049; *Credeur v. Luke*, 368 So.2d 1030 (La.1979); *Subro Audit, Inc. v. McCardell*, 538 So.2d 320, 322 (La.App. 3 Cir.1989); *Schroeder*, 577 So.2d at 1080.[3]

■ Chevalier contends that the district court abused its discretion in not awarding a new trial on the issue of damages. Chevalier argues that the jury's failure to award damages for future economic loss or pain and suffering and the jury's award of $36,000.00 for past lost wages and past pain and suffering were against the great weight of the evidence.

We will reverse the district court's denial of a new trial only if it abused its discretion. *Menard v. Penrod Drilling Co.*, 538 F.2d 1084, 1088 (5th Cir.1976). In gauging the range of discretion, we in turn consider "that a jury has great discretion in determining and awarding damages in an action for personal injuries." *Book v. Nordrill, Inc.*, 826 F.2d 1457 (5th Cir.1987). That the record supports a greater award does not justify an upward adjustment by an appellate court. *Bitoun v. Landry*, 302 So.2d 278, 279 (La.App. 2 Cir.1974). *See also Bailey v. Southern Transport Co.*, 613 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980) (reversal of jury's award permitted only when award is "so 'gross ... as to be contrary to right reason' or a 'clear abuse of discretion with respect to the assessment of damages'").

Chevalier argues that an award of less than $100,000.00 in general damages for the injury of a herniated disc is an abuse of discretion. *See, e.g., Redondo v. Consolidated Freightway Corp.*, 529 So.2d 1296, 1300 (La.App. 4 Cir.), *cert. denied*, 533 So.2d 363 (La.1988). The effort to set

---

**3.** Reliance also contends on appeal that, even if Chevalier has uninsured motorists coverage, that coverage is limited to $300,000.00 by L.H. Bossier, Inc.'s written election. We uphold the damages awarded in this case, and those damages are far less than $300,000.00. We need not decide whether coverage was limited by L.H. Bossier, Inc.'s written election.

floors, or ceilings, by type of injury is curious given the jury's broad discretion and the inherent ad hoc nature of injury. We need not explore this curiosity. The jury could have found that Chevalier's back injuries were not caused by his auto accident.

■ Chevalier also contended that he incurred a shoulder injury in the auto accident. He argues that the jury's award for past damages of $36,000.00 was impermissibly low. He also argues that the jury erred in awarding no future damages for this injury.

The jury's award to Chevalier consisted of $10,000.00 for past pain and suffering and $26,000.00 for past lost wages. The awards were within a range supported by the evidence.

■ At trial, Reliance presented uncontested evidence that Chevalier's average yearly income between 1980 and 1985 was only $2,500.00. Past work record and income is relevant but not determinative of the appropriate quantum of lost wages. *Harris v. Tenneco Oil Co.*, 563 So.2d 317, 323 (La.App. 4 Cir.1990) (citing *Folse v. Fakouri*, 371 So.2d 1120 (La.1979)); *K–Oil Rental & Supply v. Town of Gueydan*, 535 So.2d 427 (La.App. 3 Cir.1988) (plaintiff is entitled to $3,000.00 for lost income, given that he lost five months of work as security guard at wages of $600.00 per month); *Morris v. Highlands Ins. Co.*, 525 So.2d 125, 129 (La.App. 3 Cir.1988). Chevalier was disabled for four years and eight months before trial. Had he earned $2,500.00 per year during that time, he would have earned $12,500.00 for the entire period. The jury awarded Chevalier more than twice that amount. We find nothing to indicate that this was a legally inadequate assessment of his loss of income from his injury. We find that the jury's award was supported by substantial evidence.

■ In challenging the jury's award of $10,000.00 for past pain and suffering, Chevalier contends that, in Louisiana, courts on appeal have upheld awards larger than $36,000.00 in past general damages for in-juries similar to his shoulder injury. However, none of the cases cited by Chevalier purport to set a minimum level of general damages that trial courts must award for proven shoulder injuries. Indeed, in one case, the court on appeal conceded that a $50,000.00 award in general damages was "in the higher range of the lower court's discretion." *Green v. Farmers' Ins. Co.*, 412 So.2d 1136, 1143 (La.App. 2 Cir.1982). The courts in these cases found that the admittedly high awards did not abuse the discretion afforded Louisiana factfinders in assessing damages. *See* La.Civil Code Art. 1999 ("when damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of damages").

Reliance's expert, Dr. McDaniels, testified that shoulder impingement syndrome is not a serious injury and that Chevalier had normal shoulder motion on September 21, 1989 when McDaniels examined him. There was some dispute about whether Chevalier had a torn rotator cuff or a rotator cuff revision. Moreover, there was evidence that Chevalier's shoulder was injured before the auto accident.

In short, if the jury believed Reliance's experts and disbelieved Chevalier's, it could have concluded that Chevalier was afflicted with no more than a minor shoulder injury involving nerve impingement and revision of the rotator cuff that had completely healed by the time of trial.

Given such factual conclusions, the award of $10,000.00 is reasonable. A Louisiana court has stated that $50,000.00 for both past *and* future pain and suffering is "in the higher range of the lower court's discretion" for injuries more serious than Chevalier's. *Green v. Farmers' Ins. Co.*, 412 So.2d 1136, 1143 (La.App. 2 Cir.1982). The plaintiff in *Green* had incurred shoulder dislocation, humoral neck fracture, and capsulitis, in addition to a torn rotator cuff, and there was no evidence of alternative causation presented by the defendant. *Id.* at 1137. Given this range of damages set by the Louisiana courts, the jury's award of $10,000.00 for Chevalier's past pain and

suffering was well within the jury's discretion.

■ The jury rendered a "take nothing" verdict for all categories of future damages. Chevalier contends that this was against the great weight of the evidence. However, Reliance presented expert testimony that Chevalier's shoulder injuries had completely healed by September 21, 1989, almost four years after the accident. Reliance also presented testimony that Reliance could not be held liable for Chevalier's back injuries.

Chevalier argues that Reliance's vocational specialist conceded that Chevalier's injuries would seriously disadvantage him in the workplace in competing with younger, healthier people. We do not agree with this reading of the record. As Reliance's counsel developed on re-direct examination, Hebert stated only that, *if* Chevalier's injuries were as serious as Chevalier's experts contended, *then* Chevalier would be at a disadvantage in seeking a job. The jury did not need to adopt Hebert's hypothetical premise that Chevalier's experts were correct.

■ Chevalier contends that Reliance should be subject to penalties and fees under La.R.S. 22:658. Under § 658, if an insurer fails to pay a claim within sixty days of receipt of proof of claim it must pay the claimant's attorneys' fees and a penalty of 12% of the claim, "when such failure is found to be arbitrary, capricious, or without probable cause."

■ The claimant of fees and penalties under § 658 has the burden of showing that the insurer acted arbitrarily in refusing to pay a claim. *Rushing v. Dairyland Ins. Co.*, 449 So.2d 511, 514 (La.App. 1 Cir.), *affirmed,* 456 So.2d 599 (La.1984). Because the issue of the insurer's reason for refusing to pay a claim is primarily a matter of fact, the court on appeal should defer to the trial court's determination unless it is clearly erroneous. *Offshore Logistics v. Arkwright–Boston Manufacturers,* 639 F.2d 1142, 1145 (5th Cir.1981). Where an insurer has a reasonable basis to defend a claim, § 658 is not applicable.

*Gipson v. Yosemite Ins. Co.,* 494 So.2d 1290, 1292 (La.App. 2 Cir.1986). Penalties and attorneys' fees are not to be assessed merely because the insurer is cast in judgment under the policy. *Headrick v. Pennsylvania Millers Ins. Assoc.,* 245 So.2d 324 (La.1971).

There was a significant dispute over the cause of Chevalier's shoulder and back injuries. Given the conflicting evidence on this issue, we cannot find that the district court clearly erred in finding that Reliance did not act arbitrarily and capriciously. *See Gipson,* 494 So.2d at 1292–93 (where there is a serious factual question as to whether tortfeasor caused damages, court on appeal upholds trial court's decision not to award fees and penalties); *Thomas v. Hanover Ins. Co.,* 477 So.2d 1171, 1174 (La.App. 1 Cir.1985), *aff'd* 488 So.2d 181 (La.1986) (where there is conflicting medical evidence, trial court did not err in denying fees and penalties).

■ Chevalier asserts that the district court erred in allowing Reliance to reduce its obligations by the amount of workers' compensation paid to Chevalier, because Reliance had not formally intervened in the case between the tortfeasor's liability carrier, Reliance, and Chevalier pursuant to La. R.S. 23:1101. Chevalier notes that under § 1101, the compensation carrier (or employer) generally may seek reimbursement only after intervening in the litigation between the third-party's carrier and the tort plaintiff. According to Chevalier, this obligation exists even when, as in this case, the liability carrier and the compensation carrier are identical.

There is no doubt that, under Louisiana law, a compensation carrier or employer must generally be a party to the suit between a tortfeasor's carrier and tort plaintiff in order to collect reimbursement for workers' compensation from the successful tort plaintiff's judgment. *See Stafford v. Dow Chemical Co.,* 415 So.2d 393, 396 (La. App. 1 Cir.1982) ("Absent intervention, we know of no provision in the law which authorizes the employer to refuse to pay compensation or to seek a credit"). This requirement insures that all claims in-

volved in the tort suit are presented before one tribunal for fair decision in an orderly, economical, and final manner.

Reliance was *already* a party to the suit in which Chevalier says Reliance should have intervened. As Chevalier's uninsured motorist carrier, Reliance was Walters' negligent tortfeasor's de facto liability carrier, and Chevalier was suing Reliance. Moreover, Chevalier does not deny that Reliance claimed reimbursement in the suit between Chevalier and Reliance as compensation carrier from any liability award won by Chevalier. This was in essence an offset.

We know of no Louisiana case exacting the degree of formality demanded by Chevalier. Assuming, but not deciding, that Louisiana law controls the question of whether Reliance had met the requirements for recovering its earlier paid sums, it does not support Chevalier. The only case cited by Chevalier for such a proposition did not state such a rule, and, indeed, the parties in that case disobeyed it. In *National Union Fire Ins. Co. v. Liberty Mutual Ins. Co.*, 696 F.Supp. 1099, 1100 (E.D.La.1988), Liberty Mutual was both the tortfeasor's compensation and liability carrier. Rather than file a formal intervention against itself, Liberty Mutual simply reduced the liability judgment won by the cross-claimant, U–Tex by the amount of workers' compensation that it had already paid. The district court simply noted this reduction without comment on the lack of a formal intervention. *See also Aetna Casualty & Surety Co. v. Nichols*, 254 So.2d 161, 162 (La.App. 2 Cir.1971) (By simply reducing judgment by amount of compensation paid, dual compensation and liability carrier "is, in effect, claiming reimbursement paid and to be paid to it by [tort plaintiff] out of [plaintiff's] award of damages in the tort action").

■ Chevalier argues that, under the rule announced by the Louisiana Supreme Court in *Moody v. Arabie*, 498 So.2d 1081 (La.1986), Reliance must bear a portion of Chevalier's legal fees. We disagree and hold that *Moody*'s fee-shifting provisions do not apply to this case.

The *Moody* court held that an employer's compensation carrier must bear an equitable portion of a tort plaintiff's attorneys' fees when that carrier intervenes in an action between a plaintiff and a third party tortfeasor's carrier for paid compensation. The court reasoned that the compensation carrier and the plaintiff were co-owners of the right to recover from the negligent tortfeasor. The court also noted that the compensation carrier benefits from any judgment won by the plaintiff.

■ Therefore, the *Moody* court held that, under the Civil Law concept of *negotiorum gestio*, the plaintiff acts as a de facto agent of the compensation carrier in pursuing the judgment: "[a]cts of a sole co-owner, *if useful to all [co-owners]*, are ratified as de facto agency." *Moody*, 498 So.2d at 1085 (emphasis added). As the compensation carrier's de facto agent, the plaintiff may force the compensation carrier to bear its fair share of the costs of litigation necessary to recover an award for liability.

The district court held that, because the liability carrier and the compensation carrier are here the same, the *Moody* doctrine does not apply. The district court reasoned that when the intervening compensation carrier is also the liability insurer, it has no real interest in recovering the paid compensation from the liability judgment, since such funds will be paid by itself to itself. The district court therefore concluded that "the major justification of the *Moody* rationale (that the plaintiff should be compensated for work which results in benefit to the intervenor) is thus not applicable."

We have not found a Louisiana case applying *Moody* in which the liability and compensation carriers are identical. We find, however, that the district court's analysis is persuasive. The *Moody* court explicitly stated that the plaintiff acts as a de facto agent for the defendant only when his acts are "useful to all co-owners." This qualification of usefulness is a fundamental part of the Civil Law concept of *negotiorum gestio:* one who manages an affair of another as a *gestor* may recover only those expenses that are "useful and neces-

sary" to the other party. La.Civil Code art. 2299 ("Equity obliges the owner, whose business has been well-managed, ... to reimburse [the manager] all *useful and necessary* expenses"). *See also* H. Nicholas, An Introduction to Roman Law 228 (1987) ("The law [of *negotiorum gestio*] does not require the principal to pay ·the cost of every unauthorized service he receives. The *gestio* must have been 'useful', in the sense of being *something which the principal himself would have done*") (emphasis added).

Chevalier argues that a plaintiff is entitled to reimbursement of litigation costs under *Moody* even if the litigation does not, in fact, turn out to benefit the compensation carrier. For this assertion, he cites *Broussard v. Olin Corp.*, 546 So.2d 1301, 1308 (La.App. 3 Cir.1989). In *Broussard*, the plaintiff lost his suit against the negligent tortfeasor's liability insurer, and the intervening compensation carrier argued that he should not be required to reimburse the plaintiff under *Moody*, because he derived no benefit from the plaintiff's lawsuit. The *Broussard* court disagreed and held that, under *Moody*, the compensation carrier was required to reimburse the plaintiff for an equitable share of litigation expenses even though the plaintiff's lawsuit did not ultimately benefit the compensation carrier.

In *Broussard*, the compensation carrier *could* have been benefited by the plaintiff's lawsuit against the liability carrier. In this case, by contrast, Chevalier is essentially asking Reliance to pay for a lawsuit against itself. Unlike the lawsuit in *Broussard*, Chevalier's lawsuit could only harm Reliance, regardless of its outcome.

■ Chevalier objects to the form of judgment on the grounds that Reliance should not be able to reduce its share of pain-and-suffering damages by the amount of liability damages ($6,658.76) paid by Walters' liability insurer. While not denying that Reliance's policy provides uninsured motorists coverage only after the underinsured motorist's liability policy has been exhausted by judgments or payments, Chevalier contends that the reduction of

Reliance's damages is improper under *Brooks v. Chicola*, 514 So.2d 7 (La.1987).

*Brooks* does not forbid the reduction of damages in this case. The *Brooks* court held that a compensation carrier could not offset workers' compensation payments out of a judgment for general, non-economic damages. The *Brooks* court reasoned that payments made under the Louisiana workers' compensation law compensate the injured worker for loss of income and bodily faculty, not for pain, suffering, or other non-economic losses. Reducing an award for pain and suffering by an offset of compensation payments would deprive the plaintiff of pain-and-suffering damages necessary to make him whole. *Brooks*, 514 So.2d at 13.

Reliance is not reducing its liability for economic compensation by offsetting the amounts of pain-and-suffering payments paid by Southern Security. Reliance is reducing its liability for pain-and-suffering damages by the amount of pain-and-suffering damages that Chevalier is receiving from another insurer. This does not run afoul of *Brooks*. Such a reduction is necessary to prevent Chevalier from reaping a double recovery for the same injury. There was no error.

■ The district court refused to tax as costs Chevalier's expert witness fees, because such fees were not available under 28 U.S.C. § 1821, which imposes a $30.00 per day limit on expert fees. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Chevalier argues that the district court erred in applying federal law to the issue of expert witness fees in a diversity case. According to Chevalier, the *Erie* doctrine requires that expert witness fees be governed by La.R.S. 13:3666, under which Louisiana courts routinely allow additional compensation beyond the federal $30.00 per day limit. We disagree.

Chevalier argues that federal diversity courts must apply La.R.S. 13:3666 because it is a provision of Louisiana's substantive ·law. For this proposition, he cites *Henning v. Lake Charles Harbor and Terminal District*, 387 F.2d 264, 267 (5th Cir.

1968), *appeal after remand,* 409 F.2d 932 (5th Cir.1969). *Henning* held that, in Louisiana eminent domain proceedings, the federal court ought to apply La.R.S. 13:3666 to the issue of taxing expert witness fees as costs, because that provision of Louisiana law is a matter of state substantive policy: the Louisiana courts had explicitly held that payment of expert witness fees is required in order to protect Louisiana landowners' rights to just compensation under the Louisiana constitution. *Henning,* 387 F.2d at 267.

We have confined *Henning* to the special case of Louisiana eminent domain proceedings. *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679, 689 (5th Cir.1991). In the typical diversity action, "no violence is done to the twin aims of the *Erie* doctrine [of preventing forum shopping and avoidance of inequitable administration of the laws] by the application of federal procedural provisions to the taxing of costs, including expert witness fees." *Id.* Therefore, absent an express indication from the Louisiana legislature, or its courts, of Louisiana's special interest in providing litigants with recovery of expert witness fees in personal injury actions, federal law controls the award of such fees as costs.

Chevalier argues that *Williams v. Aetna Ins. Co.,* 402 So.2d 192, 194 (La.App. 1 Cir.1981), held that La.R.S. 13:3666 is "substantive." But the holding in *Williams* was for the purposes of determining retroactivity of the provision. The court did not state that Louisiana has a special interest in applying the provision in personal injury actions or that the provision is substantive for the purposes of the *Erie* doctrine.

AFFIRMED.