765 A.2d 240

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTS-BURGH PA, AND KIRBERY TRANSPORTATION, INC., PLAIN-TIFFS–APPELLANTS, v. TRANSPORTATION INSURANCE COMPANY/ A SUBSIDIARY OF CNA, DEFENDANTS–RESPON-DENTS, AND MICHAEL YAROS, HAYDEN ROOFING, INC., AND S & S ROOFING, INC., AND ZIEGLER CHEMICAL & MINERAL CORP., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 27, 2000—Decided January 19, 2001.

Before Judges D'ANNUNZIO, EICHEN and STEINBERG.

*JoAnn Katzban* argued the cause for appellants (*Garrity, Graham, Favetta & Flinn*, attorneys; *Francis X. Garrity*, of counsel; *Ms. Katzban*, on the brief).

*Ira S. Lipsius* argued the cause for respondents (*Schindel, Farman & Lipsius*, attorneys; *Mr. Lipsius*, of counsel; *Jeffrey S. Rogoff*, on the brief).

No other parties participated in this appeal.

The opinion of the court was delivered by

EICHEN, J.A.D.

Plaintiff National Union Fire Insurance of Pittsburgh, Pa. (National Union) appeals from a summary judgment granted in favor of defendant Transportation Insurance Company (TIC). We affirm.

The appeal involves an insurance coverage dispute concerning an automobile liability insurance policy issued by TIC to its

insured, S & S Roofing, Inc. (S & S Roofing) (the TIC policy).[1] In its definition of who is an insured, the TIC policy excludes coverage for persons "moving property to or from a covered 'auto.'" This is an attempt to eliminate so-called "loading and unloading" coverage. *See Kennedy v. Jefferson Smurfit Co.*, 147 *N.J.* 394, 688 *A.*2d 89 (1997). The TIC policy, however, contains an exception to its "loading and unloading" exclusion for "borrowers" of a "covered 'auto.'" This decision interprets the term "borrowers" in the policy.

National Union asserts that its insured, Kirbery Transportation Company (Kirbery) is entitled to coverage as an additional insured under the TIC policy for a personal injury claim asserted by Michael Yaros, an S & S Roofing employee, against Kirbery because Kirbery was a "borrower" of a "covered 'auto'" under that policy.

These are the material facts. Yaros was employed as a tankerman/kettleman for S & S Roofing and was in charge of the use of two tankers (a storage tanker and a pumping/production tanker) which were on loan to S & S Roofing from Hayden Roofing, Inc. (Hayden).[2] The tankers were being used to transport hot asphalt to a construction site for a roofing project.

On February 26, 1996, Ralph Pope, an employee of Kirbery, arrived at the construction site with a delivery of hot asphalt (steap), parked his delivery truck in between the Hayden tankers, and asked Yaros which of the two tankers Yaros wanted loaded

---

[1] CNA Insurance Company was a named defendant in the original complaint filed by National Union; however, TIC was substituted for CNA in an amended complaint after National Union discovered that S & S Roofing's policy was with TIC, not CNA. TIC is a subsidiary of CNA.

[2] According to the amended complaint filed by National Union, Hayden is a New York corporation with its principal offices in New York State. Subsequent to oral argument on appeal, at our request, counsel for National Union furnished us with copies of the New Jersey registration for the Hayden tanker involved in the accident. Hayden had no commercial liability insurance policy for the tanker.

first. Yaros responded that Pope should fill the storage tanker first. Pope then removed the hose from his own truck, climbed on top of the storage tanker, opened the hatch, inserted the hose into the storage tanker, tied the hose down with a chain, and then went inside his truck to engage the pump. Pope then climbed back on top of the storage tanker until the filling process was completed. During the delivery, Yaros was eating his lunch in a nearby truck. The delivery took approximately twenty to thirty minutes. When it was complete, Pope flushed his hose with diesel fuel. Pope then asked Yaros whether he wanted Pope to put the remainder of the asphalt into the pumping/production tanker. Yaros responded affirmatively, shut off the heating system on the pumping/ production tanker, and Pope began to fill that tanker. After approximately twenty minutes, the hose started "kicking," at which point Pope checked his own tank and determined that it was empty. He then shut down the pump, disconnected the line from his tanker, and told Yaros that he was done unloading. According to Pope, Yaros then told him that he was going to the top of the pumping/production tanker to measure the asphalt level and that he would disconnect the chain.

Pope testified that he then flush-cleaned his hose and began to take his line apart as Yaros was going to the top of the pumping/production tanker. When Yaros reached the top, a fireball explosion occurred engulfing him in flames. Yaros jumped off the ladder, rolled in mud and water to extinguish the flames on his person, and climbed back to the top of the tanker to put out the flames in the tanker. Yaros suffered first, second and third degree burns to his chest, right arm and face in the explosion.

Yaros sued Kirbery alleging negligence in the manner in which the delivery was made. National Union then commenced this declaratory judgment action against TIC seeking a determination that TIC was obligated to provide for Kirbery's defense and to reimburse National Union for all defense costs. Thereafter, National Union settled Yaros' claim against Kirbery for $560,000 and moved for summary judgment in the declaratory judgment action.

TIC cross-moved for similar relief. On the motions, National Union argued, among other things, that Kirbery was an additional insured under S & S Roofing's automobile policy issued by TIC because Pope was in control of the Hayden tanker during the loading process and, therefore, Kirbery was a "borrower" under the terms of the TIC policy.

The following are "insureds" under the TIC policy:

a. You [S & S Roofing] for any covered "auto."

b. Anyone else while using with your [S & S Roofing] permission a covered "auto" you [S & S Roofing] own, hire or borrow except:

(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto." (hereinafter Section b(4).)

The motion judge granted TIC's cross-motion and dismissed National Union's complaint concluding that (1) the TIC policy did not provide coverage for Kirbery because Kirbery was not a "borrower" inasmuch as Kirbery's operator, Pope, had not exercised control and/or dominion over the Hayden tanker; (2) even if Kirbery was a "borrower," National Union is not entitled to contribution from TIC because National Union's policy provided primary coverage and TIC's policy only provided excess coverage; and (3) National Union is not entitled to contribution from TIC because the policies do not insure against the same risks.

## I.

This appeal requires us to decide whether the TIC policy affords Kirbery coverage under the "borrower" exception to the "loading and unloading" exclusion in S & S Roofing's automobile liability policy. As a threshold matter, we deem it appropriate to point out certain stipulations made by the parties. They agreed in the trial court, as they do on appeal, that the tanker on which Yaros was injured in the accident is a "covered 'auto'" under the TIC policy; they agree that there are no issues relating to the permissive use of the tanker by Kirbery; and they agree the accident occurred during a "loading and unloading" operation. Most significantly, they agree that even though the accident

occurred during the "loading and unloading" of the tanker, because S & S Roofing is not the "owner" of the tanker that exploded, the statute mandating omnibus liability insurance coverage for loss arising out of use of an automobile, *N.J.S.A.* 39:6B–1, does not apply.[3] Hence, the parties agreed that the appeal involves only the contractual interpretation of the TIC policy. Because they insist on framing the issue in this fashion, notwithstanding the mandatory statutory omnibus clause, we address and resolve the issue as a contract dispute not governed by statute.

Applying the parties' stipulated construct to our interpretation of section b(4) of the TIC policy, the question quite simply is whether Kirbery can be considered a "borrower" of the Hayden tanker and, therefore, an additional insured under TIC's policy, entitling National Union to reimbursement for the compensation it paid to Yaros for his injuries.

Initially, we reject National Union's argument in Point I of its brief that the motion judge's misstatement of the facts shows it reached an erroneous decision on the issue of Kirbery's status as a

---

[3] Specifically, the parties agreed that the reasoning of *Ryder/PIE Nationwide, Inc. v. Harbor Bay*, 119 *N.J.* 402, 407, 575 *A.2d* 416 (1990), does not prohibit TIC from limiting "loading and unloading" coverage in this case because S & S Roofing borrowed the tankers from Hayden. *Ryder* recognized that "the obligation to provide coverage in a 'loading and unloading' accident arises from statute and therefore cannot be limited by contract." *Ibid.* Hence, National Union acknowledges that if Kirbery is not "a borrower," National Union cannot recover reimbursement from TIC of any of the settlement funds paid to Yaros for his injuries. Therefore, the issue presented on this appeal by stipulation of the parties is a narrow one which does not implicate the legislative policy expressed in *N.J.S.A.* 39:6B–1 of assuring financial protection for innocent victims of motor vehicle accidents. *See Kennedy v. Jefferson Smurfit Co.*, 147 *N.J.* 394, 688 *A.2d* 89 (1997). In light of this stipulation, we do not address the effect, if any, of the mandatory omnibus provisions on TIC's attempt to contractually exclude coverage of Kirbery. *But see Lesniakowski v. Amerada Hess Corp.*, 225 *N.J.Super.* 416, 423, 542 *A.2d* 940 (App.Div.1988) (citing *Bellafronte v. General Motors Corp.*, 151 *N.J.Super.* 377, 381, 376 *A.2d* 1294 (App.Div.1977), *certif. denied*, 75 *N.J.* 533, 384 *A.2d* 513 (1977) (implying that an attempted limitation on coverage based on the "borrower" exception to a "loading and unloading" exclusion in an automobile liability policy may violate public policy)).

"borrower." While it is true that the judge twice made reference to Yaros when he clearly should have referred to Pope, despite the factfinding mistakes, the judge's ultimate conclusion that Kirbery is not a "borrower" is correct.

■ The interpretation of an insurance policy is one of law. *Powell v. Alemaz, Inc.,* 335 *N.J.Super.* 33, 37, 760 *A.2d* 1141 (App.Div.2000). The borrower exception to the exclusion of "loading and unloading" coverage represented by section b(4) has not been treated by an appellate court in this state. Most of the "loading and unloading" cases focus on the nature of the loading and unloading activity or on whether a potential insured qualifies as a "user" in light of the word "use" in the statutory omnibus provision. *See generally Kennedy, supra,* 147 *N.J.* 394, 688 *A.2d* 89; *Greentree Assocs. v. United States Fidelity & Guaranty Co.,* 256 *N.J.Super.* 382, 607 *A.2d* 175 (App.Div.1992); *Bellafronte v. General Motors Corp.,* 151 *N.J.Super.* 377, 376 *A.2d* 1294 (App. Div.), *certif. denied,* 75 *N.J.* 533, 384 *A.2d* 513 (1977).

There is one Law Division decision, however, which the motion judge relied upon in reaching his decision, which does examine the meaning of the term "borrower" in an automobile liability policy in the "loading and unloading" context. *See F & M Schaefer Brewing Co. v. Forbes Food Div.,* 151 *N.J.Super.* 353, 362, 376 *A.2d* 1282 (Law Div.1977). In that case, the driver of a delivery truck consigned to pick up yeast slurry[4] from the plaintiff's premises was injured when one of plaintiff's employee's threw a rope. *Id.* at 355, 376 *A.2d* 1282. During the loading operation, the driver had stayed with the truck to determine when and in what quantity the yeast slurry would be transferred into it. *Ibid.* Through its insurer, the plaintiff compensated the driver for his injuries and then sought indemnification as an additional insured from the insurer of the delivery truck. The court determined that whether the plaintiff was afforded coverage as a "borrower" of the delivery

---

[4] Yeast slurry is a by-product of the brewing industry. *See F & M Schaefer Brewing Co., supra,* 151 *N.J.Super.* at 355, 376 *A.2d* 1282.

truck depended on whether the plaintiff had exercised sufficient control over the truck during the loading of the slurry into the truck. *Id.* at 362, 376 *A.*2d 1282.

The plaintiff's employees at the pick-up point had performed the following activities during the loading operation which it claimed evidenced sufficient control to make it a "borrower" of the truck: "preparation of the slurry transfer apparatus (connecting of the necessary hoses and opening of the necessary valves) within the building and the throwing of the rope [that led to the truck driver's injuries]." *Id.* at 363, 376 *A.*2d 1282.

The court concluded that the activities of the plaintiff's employees were not sufficient to demonstrate that the plaintiff had the requisite "control, dominion or power over the truck to attain the status of a 'borrower.'" *Ibid.* The court stated that the plaintiff's employees were merely cooperating with the truck driver in transferring the yeast slurry to the tank truck and that the truck had remained in the possession and control of the driver at all times. *Ibid.* In addition, the court found that the "employees were acting at [the driver's] direction, rather than the other way around." *Ibid.* Therefore, the court concluded that the plaintiff could not be considered a "borrower" and an additional insured within the "loading and unloading" clause, and its policy did not afford the plaintiff coverage for the driver's injuries. *Ibid.*

The "borrower" exception to a loading and unloading exclusion in an automobile liability policy has been treated in other jurisdictions. *See Sturgeon v. Strachan Shipping Co.,* 731 *F.*2d 255 (5th Cir.1984) (en banc), *cert. denied* by *Strachan Shipping Co. v. Bankers & Shippers Insurance Co. of New York,* 469 *U.S.* 883, 105 *S.Ct.* 251, 83 *L.Ed.*2d 188 (1984); *White v. Great American Ins. Co.,* 343 *F.Supp.* 1112 (M.D.Ala.1972); *Sentry Ins. Co. v. Pacific Indemnity,* 345 *So.*2d 283, 287 (Ala.1977); *Liberty Mutual Insurance Co. v. American Employers Ins.,* 556 *S.W.*2d 242 (Tex.1977); *Broome County Co-op Fire Ins. Co. v. Aetna Life and Casualty Co.,* 75 *Misc.*2d 587, 347 *N.Y.S.*2d 778 (Sup.Ct.1973). *See generally* 8 *Couch on Insurance* § 121:18 (3d ed. 1996 and Supp. 2000).

In *Liberty Mutual, supra,* 556 *S.W.*2d 242, a case relied on by TIC, the Supreme Court of Texas reversed a decision of an intermediate appellate court which had affirmed the trial court's conclusion that there was a sufficient showing of "control" of a delivery truck by the purchaser/unloader of plywood decking to deem the purchaser/unloader a "borrower" of the truck. *Id.* at 243. In reversing, the Texas Supreme Court concluded that the evidence was insufficient to demonstrate that the purchaser/unloader had the "right to exercise dominion and control over the truck." *Id.* at 245. The Court observed that there was no evidence that the purchaser/unloader had ever instructed the driver of the truck to move the truck or that the purchaser/unloader had keys to the truck and itself could have moved it. *Ibid.* In that context, the Court observed that if it was sufficient to simply be an "unloader" of the truck to be considered a "borrower," the "borrower" requirement would be meaningless "because one would need only be an 'unloader' to also be a 'borrower.'" *Id.* at 245. Consequently, the Court concluded that to be "a borrower" one must not only "use" in the sense of unloading the vehicle, but must also have "possession" of the vehicle, *i.e.,* the right to exercise dominion and control over the vehicle. *Ibid.* There being no such showing, the purchaser/ unloader was not a "borrower," and plaintiff was not entitled to coverage under the purchaser/unloader's insurance.

In *Sturgeon, supra,* 731 *F.*2d 255, a case interpreting Louisiana law and also relied on by TIC, the plaintiff Sturgeon delivered a load of cotton to defendant Strachan Shipping Company (Strachan). *Id.* at 256. Upon arrival, Sturgeon handed over the bills of lading, parked his rig where directed, and readied the trailer for unloading as instructed by Strachan employees. *Ibid.* After parking the truck, Sturgeon had no further involvement because Strachan's employees had full control over the unloading process. *Ibid.* As the cotton was being unloaded, a bale fell on Sturgeon injuring him. *Ibid.* Sturgeon filed suit against Strachan, and Strachan filed a third party complaint against Sturgeon's automobile liability insurance carrier, claiming coverage as a "borrower"

of the Sturgeon vehicle under the "loading and unloading" provision in the policy. *Ibid.*

Adopting Texas law, as enunciated in *Liberty Mutual, supra,* 556 *S.W.*2d 242, the Court in *Sturgeon* adopted the rule that in order to be a "borrower," not only does one have to be "using" the vehicle, connoting loading and unloading, one also has to have "possession" of the vehicle, *i.e.,* the right to exercise dominion and control over the vehicle. *Id.* at 258.

The court found that Strachan was not a "borrower" of the Sturgeon truck when the only evidence of "possession" was that Strachan's employees told Sturgeon where to park and controlled the unloading process. *Id.* at 259. The Court observed that "using" a vehicle in a loading/unloading context is not possession of the vehicle, stating: "[W]hile the fact that the process of unloading necessitates entry into the vehicle does establish that the unloader is 'using' the vehicle, it does not simultaneously establish the unloader's possession.... If it did, 'one would only need to be an unloader to be a borrower.' " *Id.* at 258. The court concluded that "the borrower requirement would be [rendered] meaningless because one would need only be an unloader to also be a 'borrower.' " *Id.* at 258 (quoting *Liberty Mutual, supra,* 556 *S.W.*2d at 245). In so concluding, the court set down "some guidelines" for determining what constitutes sufficient "control" of a vehicle to be a "borrower":

> Control of a movable object intrinsically involves power to govern its location. In the instance of a vehicle—an object whose purpose is to provide transportation— "control" of the vehicle during any given period must include power to move it during that space of time. Thus, to have control of a vehicle during loading/unloading one must have the power to move the vehicle during the loading/unloading process itself.
>
> [*Id.* at 260.]

In *Broome, supra,* 347 *N.Y.S.*2d 778, the Supreme Court of New York applied a different test. It held in the "loading and unloading" context that "[a] 'borrower' of an automobile has been described as one who 'uses the car for his own business or pleasure, and not for any purpose in which the owner is interested.' " *Id.* at

784 (quoting *Gochee v. Wagner,* 257 *N.Y.* 344, 347, 178 *N.E.* 553 (1931)). "[T]he term 'borrower' is generally understood to mean someone who has, with the permission of the owner, possession and use of the property of another." *Ibid. See also Sentry Ins. Co., supra,* 345 *So.*2d at 287 (following *Broome County Co–op Fire, supra,* 75 *Misc.*2d 587, 347 *N.Y.S.*2d 778).

In *White, supra,* 343 *F.Supp.* 1112, another case relied on by National Union, the court there concluded, without analyzing the facts or establishing any governing legal principle, that the loader had possession of the truck for purposes of loading a consignment and was a "borrower" because the loader was paying the truck owner for delivery of the consignment.

In *Chevalier v. Reliance Ins. Co.,* 953 *F.*2d 877 (5th Cir.1992), a non-loading and unloading case decided under Louisiana law and relied on by National Union, the Fifth Circuit stated that "a borrowing can occur whenever the named insured properly gains the use of a third party's ... vehicle for its purposes, no matter who has dominion or control of the car." *Id.* at 880–81 (quoting *Schroeder v. Board of Supervisors of Louisiana State University,* 577 *So.*2d 1074, 1081 (La.Ct.App.1991) (a non-loading and unloading case)).[5]

We find the rationale of *White, supra,* 343 *F.Supp.* 1112, unpersuasive and the broad construction of *Chevalier, supra,* 953 *F.*2d 877, inapplicable to the "loading and unloading" provision in the TIC policy, and adopt the analysis followed in *Sturgeon, supra,* 731 *F.*2d 255, *Liberty Mutual, supra,* 556 *S.W.*2d 242, and *F & M Schaefer Brewing Co., supra,* 151 *N.J.Super.* 353, 376 *A.*2d 1282, in interpreting the term "borrowers."

 Accordingly, we hold that, in this "loading and unloading" case, where the parties have agreed that the statutory mandatory omnibus liability coverage is not implicated because the "covered

---

[5] *Chevalier* was analyzing a different provision of an automobile liability policy. Indeed, *Chevalier* itself notes that it was giving the term a broader meaning than was given in *Sturgeon, supra,* because the term "borrower" was being used in a different policy clause and thus, a different context. *Id.* at 881.

auto" is not owned by TIC's insured, National Union's insured did not qualify as a "borrower" of the vehicle and, therefore, was not an additional insured under the TIC policy. National Union did not present sufficient evidence demonstrating its insured's right to "control" the "covered auto" by demonstrating its right to move the vehicle or otherwise direct its use.

It was Yaros, not Pope, who had "control" of the Hayden tanker. The fact that Pope hooked up the line and filled the tanker without receiving instructions from Yaros, as to how to accomplish this task; the fact that Pope, without seeking permission or direction from Yaros, remained on top of the storage tanker throughout the filling process to monitor the level of steap; or the fact that Pope flush-cleaned his hose while it was still attached to the tanker, is not the type of "control" required to make Kirbery a "borrower." Pope was simply "using" the tanker to perform his job as an "unloader." That type of activity is not indicative of the "control and dominion" described in either *Sturgeon* or *F & M Schaefer.* Pope's position on the tanker is equivalent to the Strachan employees "entering" the vehicle in *Sturgeon* during the unloading process. As the *Sturgeon* court remarked, if the mere act of loading or unloading was enough to bring one within the "borrower" requirement under the policy, the term would be rendered meaningless. *Sturgeon, supra,* 731 *F.*2d at 258. At most, Kirbery's employee, Pope, had only "temporary possession" of the tanker. *Ibid.*

Indeed, before Pope even began the loading process, he sought Yaros' direction as to which tanker to fill. And, after the storage tanker was filled, he again sought Yaros' direction as to whether he should put the remaining steap in the pumping/production tanker. If anything, these facts reflect the limited nature of Pope's right to "control" the Hayden tanker. *See F & M Schaefer, supra.* Certainly, there is no evidence that Pope had any right to move the tanker.[6] *See Sturgeon, supra,* 731 *F.*2d at 260.

---

[6] In its reply brief, National Union claims that *Sturgeon* does not apply because the Hayden tanker on which the accident occurred was not attached to a tractor

Even applying the common-sense approach of *Broome, supra,* Kirbery cannot be considered a "borrower" under the TIC policy. Under *Broome,* Kirbery would have had to show that Kirbery "use[d] the [tanker] for [Kirbery's] own business or pleasure, and not for any purpose in which [S & S Roofing] [wa]s interested...." *Broome, supra,* 347 *N.Y.S.*2d at 784. Obviously, Kirbery could not make such a showing.

In sum, we conclude that the evidence does not support the conclusion urged by National Union, namely, that the Hayden tanker "used" by Kirbery to unload the hot asphalt from its tanker was "borrowed" from S & S Roofing as we construe that term in the TIC policy. Therefore, the "loading and unloading" exclusion applies and TIC was not obligated to provide coverage for the claims asserted by Yaros against Kirbery.

## II.

In light of our conclusion, it is unnecessary for us to resolve National Union's remaining challenges to the grant of summary judgment to TIC. Hence, we do not decide whether the TIC policy provides primary coverage along with National Union's policy, entitling National Union to 50% equitable contribution from TIC,[7] or whether the policies of the parties covered the same or different risks.

Affirmed.

---

and, therefore, it could not be moved. This claim is unsupported in the record. But even if the tanker were not attached to a tractor, that fact would not alter our conclusion, for the question is whether Pope had the right to move the tanker, not whether the tanker was capable of being moved.

[7] National Union conceded that its policy provided primary coverage but contended that because the TIC policy also provided primary coverage, it was entitled to a 50–50 sharing of the loss with TIC.